785 F.2d 311
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
vs.
DIANE SIMPSON, Defendant-Appellant.
 85-1340
 United States Court of Appeals, Sixth Circuit.
 1/29/86
 
 Before: CONTIE and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Diane Simpson appeals her jury conviction of unarmed robbery of a credit union in violation of 18 U.S.C. Secs. 2113(a) and 2(a). Section 2113(a) provides in pertinent part:
 
 
 2
 Whoever, by force and violence, or by intimidation, takes . . . from the person or presence of another any property or money . . . in the care, custody, control, management, or possession of, any . . . credit union . . .;
 
 
 3
 Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
 
 Section 2 provides in pertinent part:
 
 4
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 
 
 5
 Simpson raises essentially four claims of error in this appeal. We are unpersuaded by her arguments and, accordingly, we affirm the judgment of the district court.
 
 I.
 
 6
 On October 13, 1983, Simpson approached the window of teller Patricia James at the Co-op Services Credit Union and stated 'this is a holdup.' One other teller, Julie Skinner-Cleveland, and the manager were working at the time. Simpson took a tote bag out of her purse and told James to put big bills and 20's into it. Simpson did not display a gun but did keep her hand in her purse the entire time she was at James' window. James put the money in the bag as requested and, upon further instruction, had the other teller do the same. During this time, Simpson kept saying 'hurry, hurry, hurry.' James then returned the bag to Simpson whereupon Simpson left the building, followed by a black gentlemen. The entire incident took place within a span of approximately two minutes.
 
 
 7
 On December 12, 1983, shortly after Simpson had been taken into custody, FBI agent Mark Codd showed a photograph spread to James. James identified a photograph of Simpson almost immediately and was 'very certain' that Simpson was the person who had robbed Co-op Services. Codd completed a FBI 302 Report concerning this photograph display, from which he could reconstruct which photographs were used and in what order. Codd had previously shown James a display of photographs during his initial visit to Co-op Services. James made no identification at that time and Codd made no report of the interview.
 
 
 8
 On January 4, 1985, an evidentiary hearing was held to consider suppression of the photographic identification. Simpson's counsel argued at the hearing that the failure to make out a report concerning the initial photograph display constituted a failure to preserve evidence that may have been favorable to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). That is, counsel argued that there was a possibility Simpson's photograph was included in the first display, and if it was, and James failed to identify her, such evidence would have been exculpatory. However, since the display could not be reconstructed to refute the possibility that Simpson's photograph was included, counsel asserted that the government failed to meet its duty to preserve potentially exculpatory evidence. Based on this and other arguments, Simpson moved to suppress the evidence of the photographic identification. The court denied the motion to suppress, but did not expressly address the alleged Brady issue.
 
 
 9
 The trial commenced on January 14, 1985. At the trial James testified as to the events which took place during the robbery. She stated that she was very frightened by the robbery, although the robber never said that she would hurt James, never touched James, and James never saw a weapon. James believed that the robber had a gun in her purse. James also testified that she got a good look at the robber's face, because at times there were only six inches between her face and the robber's, the lighting was good, and nothing obstructed her view.
 
 
 10
 As an element of a violation of 18 U.S.C. Sec. 2113(a), the government was required to establish that Co-op Services was a federally insured credit union.[1] Three exhibits were introduced at trial through the testimony of John Hoblack, assistant general manager of Co-op Services, to establish the credit union's insured status. The exhibits were: (1) a premium statement for the 1984 National Credit Union Administration (NCUA) assessment, (2) a premium statement for a 1983 'special assessment' by the NUCA, and (3) a duplicate copy of Co-op Service's insurance certificate. These exhibits were all received into evidence, over objections by Simpson, under the business records exception to the hearsay rule, Fed. R. Evid. 803(b).
 
 
 11
 Finally, Codd testified at trial with regard to both photographic displays. He testified that after the evidentiary hearing he went back to his office and attempted to reconstruct the first photographic array. From his notes and his 'library' of photographs he believed he was able to reconstruct the first display shown to James. He stated that Simpson's photograph was not included in that display.
 
 
 12
 At the close of the government's evidence, Simpson moved for a judgment of acquittal based on two grounds. First, she asserted the government failed to establish that Co-op Services' accounts were insured by the NCUA at the time of the robbery. Second, she contended that the language of the indictment required the government to establish that Simpson had robbed the credit union by force and violence and intimidation, and she argued that the government had failed to do so. The court rejected both grounds and denied the motion after which the defense rested without presenting evidence.
 
 
 13
 The district court then gave its instructions to the jury. The court instructed over objection by Simpson that the statute required proof of force and violence or intimidation. The court further instructed on the element of intimidation, as follows:
 
 
 14
 To take or attempt to take, by intimidation, means willfully to take, or attempt to take, by putting in fear of bodily harm. Such fear must arise from the willful conduct of the accused, rather than from some mere temperamental timidity of the victim; however, the fear of the victim need not be so great as to result in terror, panic or hysteria.
 
 
 15
 A taking, or an attempted taking by intimidation, must be established by proof of one or more acts or statements of the accused which were done or made in such a manner and under such circumstances as would produce in the ordinary person fear of bodily harm.
 
 
 16
 However, actual fear need not be proved. Fear like intent may be inferred from statements made and acts done or omitted by the accused. And by the victim as well. And from all the surrounding circumstances shown by the evidence in the case.
 
 
 17
 After deliberation, the jury returned a guilty verdict. On April 4, 1984, Simpson was sentenced to five years imprisonment. Simpson appeals from this conviction.
 
 II.
 
 18
 Simpson first contends, as she did in her motion for acquittal, that the government failed to instruct the jury on the elements of the crime consistent with the language in her indictment. Simpson argues that since the indictment charged that she 'did knowingly and willfully take by force and violence and intimidation,' the government had to prove all three elements and the court had to instruct in that manner. The court, however, instructed the jury in a manner consistent with the language of 18 U.S.C. Sec. 2113(a), which requires the government to prove the element of 'force and violence or intimidation.' The court instructed that the government was not required to prove force and violence, but must only 'prove the elements of intimidation beyond a reasonable doubt.'
 
 
 19
 This claim of error is without merit. This court squarely rejected an identical argument in United States v. Murph, 707 F.2d 895 (6th Cir.), cert. denied, 464 U.S. 844 (1983). In Murph, the indictment charged the defendant with knowing that a tax return was false, fictitious and fraudulent. The district court, however, charged the jury in a manner consistent with the language of the statute, that it could find the defendant guilty if it found the return was known to be false, fictitious or fraudulent. Id. at 896. In response to the defendant's claim that the district court erred in its instruction, this court held:
 
 
 20
 It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial the government may prove and the trial court may instruct in the disjunctive form used in the statute.
 
 
 21
 Id. at 896-97 (citation omitted). Also, the Fifth Circuit and the Ninth Circuit have rejected identical arguments in affirming convictions of violations of 18 U.S.C. Sec. 2113(a). See Young v. United States, 358 F.2d 429 (9th Cir. 1966), ('When the crime is defined disjunctively in the statute but is charged conjunctively in the indictment the proof of one of the allegations will sustain a conviction.'); United States v. Jacquillon, 469 F.2d 380, 385-86 (5th Cir. 1972), cert. denied, 410 U.S. 938 (1973) (finding no merit in defendant's argument that since the indictment charged in the conjunctive, proof of intimidation alone was insufficient to support a conviction). Based on the authority of the above cases, we find no merit in Simpson's argument.
 
 
 22
 Simpson also claims error in the district court's denial of her motion for acquittal based on insufficient evidence of intimidation and in the court's instruction on the element of intimidation. Simpson bases these arguments on the assertion that the focus of the jury's inquiry in determining intimidation should be on the reasonableness of the victim's response and not on the actions of the accused. Simpson asserts that the instruction given in this case improperly put the emphasis on her actions instead of on the reasonableness of James' response. Had the focus been on James, Simpson argues, the evidence presented would have been insufficient to establish intimidation since the only evidence was James' testimony that she was nervous and scared.
 
 
 23
 We find this argument unpersuasive. The district court's instruction was taken nearly verbatim from 2 Devitt & Blackmar, Federal Jury Practice & Instructions, Sec. 44.05 (3d Ed. 1977). The same instruction was utilized and implicitly approved in a prior Sixth Circuit case, United States v. Robinson, 527 F.2d 1170, 1171 n.1 (6th Cir. 1975) (finding of intimidation justified where defendant was wearing a coat which could conceal a weapon attempted a sham transaction and then demanded the teller give him all her money, even though no display of weapon and no threats of harm). In Robinson, the instruction was not challenged but the court observed that the same instruction 'was sustained in United States v. Alsop, 479 F.2d 65, 66-67 (9th Cir. 1973), and approved in United States v. Brown, 412 F.2d 381, 384 n.4 (8th Cir. 1969).' Id. Accordingly, there is no Sixth Circuit precedent to support rejection of the instruction given by the district court.
 
 
 24
 The two cases relied on by Simpson, United States v. Alsop, 479 F.2d 65 (9th Cir. 1973), and United States v. Hopkins, 703 F.2d 1102 (9th Cir.), cert. denied, 464 U.S. 963 (1983), do not hold that reversal is appropriate when the present instruction is given. In both cases, the juries were instructed to find intimidation if the defendant acted in such a way that 'would produce in the ordinary person fear of bodily harm.' Even though Alsop recommended that the instruction be modified to add 'ordinary, reasonable person,' and Hopkins stated that the modification 'more accurately states the law,' both decisions affirmed the district court judgments of conviction. Alsop, 479 F.2d at 67; Hopkins, 703 F.2d at 1103. Since this court has implicitly approved the Devitt & Blackmar instruction, and we find no cases holding that use of the instruction warrants reversal, we find that the district court correctly instructed on the element of intimidation.
 
 
 25
 Having approved the instruction on intimidation, we also conclude there is sufficient evidence to support a finding of intimidation. It is not significant that the evidence established that Simpson neither threatened James nor displayed a weapon, since "express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]' are not required for a conviction for bank robbery by intimidation.' Hopkins, 703 F.2d at 1103, quoting United States v. Bingham, 628 F.2d 548, 549 (9th Cir. 1980); see also, Robinson, 527 F.2d at 1172 (display of a weapon, 'hint' of a weapon, or explicit threat is not a sine quo non of intimidation). In the present case, the evidence established that Simpson approached James and stated 'this is a holdup,' gave James a tote bag and told James to 'put big bills and 20's in the bag.' Also, Simpson never took her hand out of her purse, which led James to believe that Simpson possessed a concealed weapon. Lastly, James testified that she was 'frightened,' 'nervous' 'upset' and 'scared' by the robbery. We find that these circumstances are sufficient to support a finding of intimidation. See, United States v. Lucas, 619 F.2d 870, 870-71 (10th Cir. 1980) (even though weapon displayed was recognized by everyone as a toy, testimony was 'sufficient for the jury to conclude beyond a reasonable doubt that the subjective intimidation indicated by the witnesses arose from objectively intimidating facts, thus satisfying the statutory requirement of intimidation.').
 
 
 26
 To establish a violation of 18 U.S.C. Sec. 2113(a), the government was required to prove that Co-op Services was federally insured at the time of the robbery. United States v. Rowan, 518 F.2d 685, 692 (6th Cir.), cert. denied, 423 U.S. 949 (1975). Simpson contends that the government failed to do so, arguing that the three government exhibits introduced to establish Co-op Services' insured status were all inadmissible hearsay. Without these exhibits, Simpson argues, there would have been insufficient evidence to establish insured status. As noted previously, Simpson raised this same claim as one of the two grounds supporting her motion for acquittal.
 
 
 27
 Simpson specifically argues that the insurance certificate was improperly admitted under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), because there was no evidence that the duplicate insurance certificate was kept in the regular course of the NCUA's business. Simpson bases this claim on the contention that Hoblack, who testified concerning the certificate, could not testify as to the NCUA's business since he was outside of the NCUA. Based on her conclusion that the insurance certificate should not have been admitted into evidence, Simpson argues that there was insufficient evidence to establish Co-op Services' insured status. Simpson asserts that the other evidence, the premium statements, failed to show that Co-op Services was insured on the date of the robbery.
 
 
 28
 The determination of the admissibility of evidence under Rule 803(6) is within the discretion of the district court. United States v. Patterson, 644 F.2d 890, 900 (1st Cir. 1981); United States v. Evans, 572 F.2d 455, 490 (5th Cir.), cert. denied, 439 U.S. 870 (1978). We first find that the premium records were properly admitted under the business records exception. Rule 803(6) provides in part:
 
 
 29
 A memorandum, report, record, or date of compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or date of compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness.
 
 
 30
 As a person 'familiar with the insurance that the credit union keeps,' Hoblack testified that the premium records were made at the time the premium payments were made by a person with personal knowledge of the payment, were kept in the course of Co-op Services' regularly conducted business activity, and were recorded in accordance with the credit union's regular business practice. This testimony provides sufficient basis for the admission of the premium records and, accordingly, we hold that the district court did not abuse its discretion in admitting them into evidence.
 
 
 31
 As for the admissibility of the insurance certificate, we note that this court has held that an FDIC insurance certificate is kept in the ordinary course of a banking business and is an admissible business record. United States v. Riley, 435 F.2d 725, 726 (6th Cir. 1970); United States v. Rowan, 518 F.2d 685 (6th Cir. 1975). The NCUA certificate in this case is analogous to an FDIC certificate since it is merely the certificate of insurance given to credit unions rather than that given to banks. Therefore, there is support for admissibility under Rule 803(6). Also, Hoblack testified that the certificate was kept in the regular course of the credit union's business. There is a problem, however, in that the document introduced was not the certificate possessed by the credit union but was instead a duplicate issued by the NCUA to replace the lost original. Accordingly, the actual document introduced was not 'kept' by Co-op Services but was produced in the ordinary course of the NCUA's business and Hoblack was not a qualified witness to testify as to the practices of the NCUA.[2]
 
 
 32
 The government asserts that Fed. R. Evid. 803(8)(B) provides an alternative basis for admissibility of the certificate. The rule provides:
 
 
 33
 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . ..
 
 
 34
 Of course, an appellate court may affirm the decision, if correct, of a trial court even though the court relied on incorrect grounds in reaching its decision. See Helvering v. Gowran, 302 U.S. 238, 245 (1947); United States v. Yakobov, 712 F.2d 20, 23 n.3 (2d Cir. 1983) (the government may seek 'affirmance on the basis of an exception to the hearsay rule other than that specified at trial, provided that the alternative basis for admission finds support in the record'). With this rule in mind, we find that the government's proffered alternative basis for admission of the insurance is supported by the record and therefore affirm the admission of the certificate into evidence. As the government correctly observes, the NCUA is a public agency, established pursuant to 12 U.S.C. Sec. 1752a(a), and is directed to issue certificates to credit unions indicating their isured status under 12 U.S.C. Sec. 1781(d). Accordingly, the duplicate certificate sent to Hoblack is a record 'setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report,' thereby satisfying the requirements of 803(8)(B).
 
 
 35
 Having found that the government's exhibits are admissible, we must determine whether there is sufficient evidence to support a finding that Co-op Services was federally insured at the time of the robbery. In deciding this issue, we view the evidence in the light most favorable to the government and resolve all inferences which may reasonably be drawn in the government's favor. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Wolfenbarger, 426 F.2d 992 (6th Cir. 1970). A finding of insufficient evidence of federal insurance at the time of the robbery would require reversal and entry of a judgment of acquittal under Burks v. United States, 437 U.S. 1 (1978). United States v. Sliker, 751 F.2d 477, 484 n.4 (2d Cir. 1984), cert. denied, 105 S. Ct. 1772 (1985); United States v. Maner, 611 F.2d 107, 112 n.4 (5th Cir. 1980).
 
 
 36
 Based on the three government exhibits, we conclude there is sufficient evidence of insured status. The insurance certificate establishes that Co-op Services was federally insured in 1974, before the robbery. The two premium records indicate that Co-op Services paid for insurance on May 27, 1983, prior to the robbery, and again on January 23, 1984, after the robbery. Accordingly, there is evidence that the credit union was insured before and after the robbery, which is sufficient to sustain a conviction under Sec. 2113(a). See, United States v. Rowan, 518 F.2d 685, 692-93 (6th Cir.), cert. denied, 423 U.S. 949 (1975) (certificate of insurance dated before robbery, statement by bank manager branch insured on date of trial was sufficient, even though manager admitted he did not know of his personal knowledge if premiums paid during time of robbery); United States v. Fitzpatrick, 581 F.2d 1221, 1223 (1978) ('[A] jury can reasonably infer that an institution was federally insured on the date of a robbery if it is presented with evidence showing that the institution was insured both prior to that date and recently thereafter.').
 
 
 37
 Simpson lastly argues that her rights under Brady v. Maryland, 373 U.S. 83 (1963), were violated. Simpson observes that the Supreme Court in United States v. Agurs, 427 U.S. 97 (1976) stated that Brady applies in three situations: (1) where 'the disclosed evidence demonstrates that the prosecution's case includes perjured testimony' of which the prosecution knew or should have known, id. at 103, (2) where the government fails to respond to a pre-trial request by the defendant for specific information, id. at 104, and (3) where 'only a general request for 'Brady material' has been made' or no request at all is made. Id. at 107. Simpson argues that this case falls within the second category because at the evidentiary hearing counsel requested the photographs used in, and the 302 Report of, the first photograph display. Agent Codd testified at that time that he could not reconstruct the display with the actual photographs. However, at trial Codd testified that he was able to reconstruct the display from his notes and from tears he had made in the photographs. He also concluded that Simpson's photograph was not included in the first display.
 
 
 38
 The Supreme Court recently discussed the holding of Brady in United States v. Bagley, 105 S. Ct. 3375 (1985). The Court stated that '[t]he holding in Brady v. Maryland requires disclosure only of evidence that is both favorable to the accused and is 'material either to guilt or punishment." Id. at 3379, quoting Brady, 373 U.S. at 87. The Court further observed that under Brady a prosecutor is required 'only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.' Id. at 3380 (emphasis added). Evidence is 'favorable to the accused' only if, were it disclosed and used effectively, it 'may make the difference between conviction and acquittal.' Id.
 
 
 39
 There are several reasons why no Brady error occurred in the present case. First and foremost, the evidence is not favorable to Simpson. The evidence concerning the photographs used in the first display was not exculpatory. While under Simpson's theory the evidence would be favorable, both Codd and James testified at trial that Simpson's photograph was not included in the first display, thereby refuting Simpson's theory. Simpson, on the other hand, provided no evidence to support her theory and, accordingly, the evidence of the photographs used in the first display cannot be considered exculpatory. Second, the evidence was not suppressed. Even though the government did not produce the evidence when Simpson requested it at the hearing, the government did not suppress the evidence at trial. This is contrary to the situations in both Brady and Agurs where the prosecutor failed to disclose exculpatory evidence. Because the evidence was not exculpatory and was not suppressed, we cannot say that Simpson was denied a fair trial. The Brady rule is 'based on the requirement of due process,' Bagley, 105 S. Ct. at 3380, and 'unless the omission deprived the defendant of a fair trial, there [is] no constitutional violation requiring that the verdict be set aside.' Agurs, 427 U.S. at 108. Simpson's only complaint can be that Codd should have filled out a 302 Report after the first display. Codd testified at trial, however, that there was no requirement to complete a report after each interview and that he felt that there was no need to complete one after his first interview with James. While it may have been better procedure if Codd had completed such a report, there is insufficient evidence to establish that Simpson was denied a fair trial. Therefore, we reject Simpson's final argument. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 18 U.S.C. Sec. 2113(h) provides:
 As used in this section the term 'credit union' means any Federal credit union and any State-chartered credit union the accounts of which are insured by the Administrator of the National Credit Union Administration.
 
 
 [2]
 The fact that the document was a duplicate is not troublesome in itself, since copies of insurance certificates have been consistently admitted to establish insured status. See e.g., Rowan, 518 F.2d at 692; United States v. Albert, 773 F.2d 386, 388 (1st Cir. 1985); Platenburg, 657 F.2d at 798 n.1. However, in those cases the copy was of the original certificate kept by the banking institution which is not the case here