UNITED STATES of America,
Plaintiff-Appellee,

v.

Terry Jean ROWAN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Leon JACKSON, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Sharon Renee GADDIE,
Defendant-Appellant.

Nos. 74–2283 to 74–2285.

United States Court of Appeals,
Sixth Circuit.

July 11, 1975.

Certiorari Denied Nov. 11, 1975.
See 96 S.Ct. 368.

Michael D. O'Connor, Kalamazoo, Mich. (Court-appointed), for Jackson.

Frank S. Spies, U. S. Atty., Grand Rapids, Mich., for United States.

Bruce W. Neckers, Grand Rapids, Mich. (Court-appointed), for Rowan.

Michael O'N. Barron, Kalamazoo, Mich. (Court-appointed), Thea Rossi Barron, Kalamazoo, Mich., for Gaddie.

Before CELEBREZZE, MILLER and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

These appeals are from convictions arising out of a series of events which culminated in the robbery of a branch of the American National Bank of Kalamazoo, Michigan. Appellant Rowan was acquitted on three counts involving bank robbery, under 18 U.S.C. §§ 2113(a), (c), (d) and 2(a), but was convicted on one count of possessing an unregistered destructive device, in violation of 26 U.S.C. §§ 5845(a), (f), 5861(d), and 5871 and 18 U.S.C. § 2(a). Appellants Jackson and Gaddie were convicted on the three bank robbery counts and on the charge of possessing a Molotov cocktail.

Briefly summarized, the evidence established that three persons entered a branch of the American National Bank at 10:00 a. m., on January 15, 1974. With gun in hand Jackson ordered that no one move and directed Gaddie to empty a teller's cage of its cash and to put it into her hand bag. A third robber, whom the Government contended was Rowan, stood just inside the Bank's entrance. While exiting the Bank, Gaddie and the third robber ignited and threw fire bombs onto the Bank's floor. The three escaped in an automobile driven by co-defendant Charles Bolden, who later pled guilty to one count and testified for the Government that he had driven Appellants to and from the Bank of the day of the robbery.

Each Appellant emphasizes different issues on appeal, and most issues are relevant to only one Appellant.

Appellant Rowan raises two issues, both of which are unique to her. She argues that the Government improperly failed to preserve certain evidence and that there was insufficient evidence to support her conviction.

Her second argument is untenable. Rowan was linked to the robbery by the testimony of several witnesses. Although the jury acquitted her on the bank robbery counts, there is evidence that she was the third bank robber who threw a fire bomb onto the Bank floor, that she had planned the robbery, that Charles Bolden (the get-away driver) made the fire bombs in Rowan's apartment the night before the robbery, that spice bottles from her apartment were used to make the fire bombs, that the "wicks" on the bombs were remnants torn from a pillow case found in her apartment, and that open drinking glasses filled with spices were found in a cupboard in her apartment.

Viewing the evidence and drawing reasonable inferences in the light most favorable to the Government,

*United States* v. *Thomas,* 497 F.2d 1149, 1150 (6th Cir. 1974); *United States* v. *Scales,* 464 F.2d 371, 373 (6th Cir. 1972), we find substantial evidence to support Rowan's conviction for possessing an unregistered destructive device, or for aiding and abetting such offense. The evidence relating to her involvement with the robbery may be used to support her conviction on the possession count, notwithstanding her acquittal on the robbery charges. A jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts. *Dunn* v. *United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

Rowan's other argument is also without merit. She complains that federal agents failed to preserve for fingerprinting two glasses and a mayonnaise jar in which spices were found that had been emptied out of the bottles used to make the bombs. Federal agents seized the glasses and jar while executing a search warrant in Rowan's apartment but did not have them fingerprinted.

Rowan's contention is that her fingerprints would not have been found on the items and that this proof would have bolstered her contention that she merely shared an apartment with Bolden, who manufactured the bombs and used them without involving Rowan. She asserts that non-preservation of the fingerprint evidence violated her right to relevant evidence under the Government's control, citing *Brady* v. *Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

█ We agree with Appellee that fingerprint evidence from the items would have been of negligible value to Rowan. If her prints had not been found on the items, this would not have negated the substantial evidence that she possessed or aided and abetted the possession of the bombs. She was not charged with making but with possessing a bomb. If her prints had been found on the glasses or jar, she would properly have argued that there were many innocent ways

they could have been put there, since they were found in her apartment. *See United States* v. *Collon,* 426 F.2d 939 (6th Cir. 1970). Thus, even if we were to view the Government's failure to preserve the items for fingerprinting as suppression of evidence to which Appellant was entitled, we could not reverse the conviction. As we held in *Beasley* v. *United States,* 491 F.2d 687, 689 (6th Cir. 1974), "The evidence was not exonerating."

Appellant Jackson raises three issues which are peculiar to him. The first concerns the two-jury device used by the District Court.

Jackson requested a separate trial from his co-defendants on two grounds: that photographs of the robbers by the Bank's surveillance camera made a stronger case against Gaddie than against him, which would inflame the jury against him, and that Gaddie was willing to testify that Jackson was not one of the robbers but would not do so before a jury considering her guilt.

The District Court granted severance on the ground that Jackson was entitled to Gaddie's testimony. Since much of the testimony was common to both Jackson and the co-defendants, completely separate trials were not held. Instead, the Court impaneled two juries. One was to consider the Gaddie and Rowan cases, without hearing Gaddie's testimony. The other was to hear the same evidence as the first, but in addition was to hear Gaddie's testimony and to determine Jackson's guilt or innocence.

During the trial, Jackson's counsel announced that he would not call Gaddie after all. Thus, the District Court's reason for impaneling the two juries evaporated. The trial proceeded with two juries nonetheless, and Jackson was convicted on all four counts.

Jackson claims that permitting his jury to hear testimony and to see exhibits related solely to the guilt of his co-defendants denied his right to a fair trial. He claims that only seven of the Government's 25 witnesses gave testimony rele-

vant to the identity of the gunman and that the relatively clear photograph of Gaddie leaving the Bank unduly prejudiced the jury.

Under Rule 14, Fed.R.Crim.P., the question of partial or total severance is within the sound discretion of the trial judge. *United States* v. *Goble,* 512 F.2d 458, 465–66 (6th Cir. 1975); *United States* v. *Lee,* 428 F.2d 917, 920 (6th Cir. 1970); *United States* v. *Etheridge,* 424 F.2d 951, 967 (6th Cir. 1970). Jackson's actions were intertwined with those of his co-defendants, and he cannot claim "cumulation of prejudice by charging defendants with similar but unrelated offenses." *United States* v. *Reynolds,* 489 F.2d 4, 6 (6th Cir. 1973), *quoting Cupo* v. *United States,* 123 U.S.App.D.C. 324, 359 F.2d 990, 993 (1966). Indeed, what was effectively a joint trial to two juries was appropriate if the entire incident was to be fully explained. The fact that the District Court granted a form of severance for a purpose which disappeared when Jackson chose not to call Gaddie to the stand does not affect the principle that Jackson must show substantial prejudice to override the District Court's discretion in denying complete severance. In fact, the Gaddie-Rowan jury rebutted Jackson's claim of undue prejudice flowing inevitably from the photograph of Gaddie, since it acquitted Rowan of bank robbery. The District Court's discretion was not abused.

We note that this situation differs from the bifurcated trial employed in *United States* v. *Crane,* 499 F.2d 1385 (6th Cir. 1974), where one jury was asked to return a verdict as to one co-defendant on a charge of bank robbery, and was then asked to consider the confession of the appellant and to return a verdict as to him on a charge of possessing stolen bank funds. The jury acquitted the co-defendant but convicted the appellant. Although we affirmed the conviction in *Crane,* because the acquittal of the co-defendant showed that the jury was not prejudiced by trying the appellant along with the co-defendant, we expressed grave misgivings about the general use of bifurcated trials. As we

said there, "[J]ustice, not judicial economy, is the first principle of our legal system." 499 F.2d at 1388. Here, there was no testimony against Jackson that would have required a separate trial in the first place, since Gaddie did not take the stand. Accordingly, our concern in *Crane* does not apply to this case.

A second issue which pertains to Jackson alone concerns a motion to suppress his in-court identification by four Bank employees and a customer, who were shown five different "mug shots" by FBI agents before trial. Appellant argues that his photograph was unduly distinctive and that the procedure gave rise to a substantial likelihood of irreparable misidentification, citing *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). He faults the District Court for failing to hold an evidentiary hearing on his motion to suppress the in-court identifications. The District Court personally examined the five photographs and permitted the in-court identifications without further hearing.

While the question whether due process is violated by allowing in-court identifications based in part upon a prior suggestive confrontation "depends on the totality of the circumstances surrounding it," *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Holland* v. *Perini,* 512 F.2d 99, 103 (6th Cir. 1975), and while this determination normally requires a hearing, a hearing on surrounding circumstances may not be necessary when the sole basis for objection is the suggestiveness of a set of photographs. Because Appellant made no attack on the circumstances surrounding the witness' viewing of the photographs and argued only that his photograph was unduly distinctive from the other four, we find no error in the District Court's proceeding without a protracted hearing.

We have viewed the photographs and do not find Appellant's unusually different from the other four. Certainly the procedure here was far less suggestive than those in *Neil* v. *Biggers,* 409

U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and in *Holland* v. *Perini,* 512 F.2d 99 (6th Cir. 1975); *Sewell* v. *Cardwell,* 454 F.2d 177 (6th Cir. 1972), and *Johnson* v. *Salisbury,* 448 F.2d 374, (6th Cir. 1971), *cert. denied,* 405 U.S. 928, 92 S.Ct. 979, 30 L.Ed.2d 801 (1972), where we upheld in-court identifications.

The third issue relating solely to Jackson concerns a "flight" instruction. The evidence established that Jackson departed Kalamazoo for Chicago thirty hours after the robbery. Jackson argued that he had gone to Chicago to visit relatives. The District Court instructed the jury, over Appellant's objection, that evidence of flight was in itself not sufficient to establish guilt but that the jury could take Jackson's departure into account and attach whatever significance it thought proper. The District Court added,

> Let me suggest also that the feeling of guilt does not necessarily reflect actual guilt. For example, the trip to Chicago, which was not immediately after, but 36 hours or more after the event, may or may not be, as the defendant contends, a visit to relatives. He did visit relatives, and they did visit relatives in Chicago. The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence. It is for you to decide all these issues.

 We agree with the District Court that it was for the jury to decide what weight should be attached to Jackson's trip to Chicago. A "flight" instruction is not improper when a defendant leaves the community where the crime was committed within a reasonably short period of the crime. The evidence was relevant and admissible, and the District Court's instruction served to explain the pitfalls of placing excessive reliance on flight as evidence of guilt. *Wong Sun* v. *United States,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Indeed, the District Court's instruction was patterned on the model instruction found in *Jury Instructions and Forms for Federal Criminal Cases,* 27 F.R.D. 39, 59 (1960). It was not improper. *See Allen* v. *United States,* 164 U.S. 492, 498–99, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Bird* v. *United States,* 187 U.S. 118, 131, 23 S.Ct. 42, 47 L.Ed. 100 (1902); *United States* v. *Greiser,* 502 F.2d 1295, 1299–1300 (9th Cir. 1974); *United States* v. *Miles,* 468 F.2d 482, 489–90 (3d Cir. 1972); *Bailey* v. *United States,* 410 F.2d 1209, 1217 (10th Cir.), *cert. denied sub nom., Freeman* v. *United States,* 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969); *Edmonds* v. *United States,* 106 U.S.App.D.C. 373, 273 F.2d 108, 114–15 (1959) (*en banc*).

There are two remaining issues, one of which pertains to both Jackson and Gaddie.

The common question is whether the Government improperly attempted to impeach its own witnesses by referring to alleged prior inconsistent statements without a showing that the statements had been made. Two witnesses called by the Government were asked whether they could identify Gaddie or Jackson as being present at the Bank or during a meeting in Rowan's apartment shortly before the robbery. They stated that they could not. The Government then asked whether they had not earlier given contrary information to FBI agents, implying that they had done so. The Government failed to call agents to the stand to show prior inconsistent statements. A similar technique of undermining the credibility of a third witness was used. Appellant Jackson argues that this procedure was improper because a party may impeach its own witnesses only upon a showing of "surprise," *United States* v. *Gregory,* 472 F.2d 484, 487 (5th Cir. 1973), and because the questioning's prejudicial impact on Appellants outweighed any rehabilitative effect on the Government's case, in view of the Government's failure to produce proof that the inconsistent statements had been made. *United States* v. *Bohle,* 445 F.2d 54, 73 (7th Cir. 1971).

 We have held that the scope of examination of a witness called by

but hostile to a party is within the discretion of the trial judge. *Poliafico* v. *United States,* 237 F.2d 97, 108–09 (6th Cir. 1956), *cert. denied,* 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957). We believe, nonetheless, that it would have been better practice for the District Court to have required the prosecution to make a showing of the prior statements. In the absence thereof, and even in the absence of an objection or requested instruction, it should have instructed the jury to ignore this line of questioning and not to consider the Government's implicit inferences as evidence against Appellants. *United States* v. *Lester,* 491 F.2d 680 (6th Cir. 1974). In view of the overwhelming evidence against Appellants, however, including the Bank's surveillance photographs of both Jackson and Gaddie, and the minimal possible effect of the Government's attempts to impeach the three witnesses, we hold that any prejudicial impact of the Government's conduct on Jackson and Gaddie was negligible and that any error committed was harmless beyond a reasonable doubt. *Schneble* v. *Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chapman* v. *California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Glinsey* v. *Parker,* 491 F.2d 337, 343–44 (6th Cir.), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2630, 41 L.Ed. 227 (1974).

■ The final issue, raised by Appellant Gaddie, concerns the proof necessary to allow a jury to conclude that a bank is federally insured. One element which the Government was required to prove to establish a violation of 18 U.S.C. § 2113 was that the Bank's deposits were insured by the Federal Deposit Insurance Corporation at the time of the robbery. *United States* v. *Riley,* 435 F.2d 725, 726 (6th Cir. 1970); *United States* v. *Murrah,* 478 F.2d 762 (5th Cir. 1973); *Kane* v. *United States,* 431 F.2d 172 (8th Cir. 1970); *King* v. *United States,* 426 F.2d 278 (9th Cir. 1970).

The branch manager of the robbed Bank was asked, "Is your branch insured by the Federal Deposit Insurance Corpo-ration," to which he replied, "Yes, it is." The manager brought with him a copy of the FDIC certificate, which hung in his office and which was dated December 1969. At this point counsel for Rowan agreed to stipulate the fact of federal insurance. Counsel for Gaddie objected to the certificate, because it predated by several years the 1974 robbery. He asked the manager whether he knew of his "own personal knowledge" that the FDIC premiums had been paid during the time of the robbery, to which the manager replied, "No." Counsel for Jackson stated that he had no objection to the admission of the certificate. The Court then overruled the objection of counsel for Gaddie and allowed the certificate's admission into evidence. No further evidence was submitted on the issue of federal insurance.

The District Court instructed the juries that they were to determine whether, beyond a reasonable doubt, "the bank in question [was] insured by the Federal Deposit Insurance [*sic*] on the date and day of this event." Forty-five minutes after retiring to deliberate, the Gaddie-Rowan jury sent a note to the District Court asking three questions:

"When was this branch bank insured the first time?

"How long is the FDIC Certificate for? One year? Five Years?

"When was this bank first open?"

After a discussion between counsel and the Court, before a court reporter, the District Court answered the query as follows:

THE COURT: First, with reference to the three questions which you submitted to the Court, these questions cannot be the subject of additional testimony at this time, because the case is submitted to the jury. However, I have checked the decided cases, and I instruct you that the certificate, which was admitted into the record, and the certificate showing Federal Deposit Insurance Corporation coverage as of 1969 when it was issued, is sufficient

to establish the insurance for purpose of the Federal jurisdiction.

So, move on to consideration of all the other questions in the case.

After a second question on another issue was received from the jury and was answered, the Gaddie-Rowan jury returned its verdict. Before opening it, the District Court asked it to do the following:

THE COURT. Members of the jury, we have one more task for you to perform, and it relates to the question of whether at the time of the alleged robbery of the bank the bank was insured by the Federal Deposit Insurance Company. That is the single question of fact, which you should resolve, and we will put it in the form of a question and you can answer it yes or no.

The sealed reply was that the Bank was FDIC-insured on the day of the robbery. Gaddie was convicted on the bank robbery counts.

Three problems emerge from this sequence of events.

First, Gaddie argues that no proper foundation was laid for the FDIC certificate. Under the Business Records Act, 28 U.S.C. § 1732 (1970), Appellant argues, it must be shown that the certificate was kept in the ordinary course of business, under *Taylor* v. *B. Heller and Co.,* 364 F.2d 608, 613 (6th Cir. 1966). We hold that although the Government might have laid a better foundation, there is no doubt whatsoever that an FDIC certificate is kept in the ordinary course of a banking business and that it is an admissible business record. *United States* v. *Riley,* 435 F.2d 725, 726 (6th Cir. 1970). We find no objection from counsel for any Appellant to its introduction on this particular ground, furthermore, and we find no objection to its authenticity. Accordingly, we find no reversible error in its admission. *Kane* v. *United States,* 431 F.2d 172, 175–76 (8th Cir. 1970).

 Second, Gaddie argues that there was insufficient evidence to show that the Bank was insured at the time of the robbery. The evidence consisted of an FDIC certificate dated December 1969, a statement by the branch manager that his branch was FDIC-insured on the day of trial (April 1974), and the manager's admission that he did not know of his own personal knowledge that the premiums were paid in January and February 1974 (the robbery having occurred on January 15, 1974). Construing the evidence and drawing reasonable inferences in the light most favorable to the Government, we find that the branch was FDIC-insured both in December 1969 and in April 1974. The jury was allowed reasonably to infer therefrom that the branch was FDIC-insured on the day of the robbery.

Finally, Gaddie objects to the unorthodox procedure used by the District Court in response to the jury's questions. Gaddie argues that the Court's response partially directed a verdict of guilty, telling the jury that FDIC insurance had been proven and that it should "move on to consideration of all the other questions in the case."

 A trial judge may not direct a verdict of guilty "no matter how conclusive the evidence." *Schwachter* v. *United States,* 237 F.2d 640, 644 (6th Cir. 1956). In response to a jury's question after it has begun deliberating, however, a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision. *United States* v. *Burkhart,* 501 F.2d 993, 997 (6th Cir. 1974).

The District Court decided to inform the jury that the 1969 FDIC certificate "is sufficient to establish the insurance for purpose of the Federal jurisdiction" and to have it decide Gaddie's guilt or innocence without reference to the question of federal insurance. After a verdict was returned, the Court asked the jury to answer a specially submitted question as to whether FDIC insurance existed on the date of the robbery.

We believe that this procedure did not deprive Gaddie of the right to have the jury decide all questions of fact and the

ultimate question of guilt or innocence. The jury did find, albeit specially, that the branch was FDIC-insured on the day of the robbery.

We do not approve the District Court's procedure as the best method of dealing with this situation. Rather than requiring a verdict without consideration of one element of the case and then "completing" the verdict through a special answer to the suspended question, the better course would have been to respond to the jury's questions by informing it that a 1969 FDIC certificate and evidence of insurance in April 1974 amounted to circumstantial evidence, sufficient but not conclusive on the question of FDIC insurance on January 15, 1974. It was for the jury to decide whether it was convinced beyond a reasonable doubt that the necessary inference should be drawn.

The District Court's method, nonetheless, resulted in the jury's deciding as a factual matter that FDIC insurance existed on the day of the robbery. Accordingly, we do not find an abuse of discretion in the method the District Court used to confront its problem. *See United States* v. *Burkhart,* 501 F.2d 993, 997 (6th Cir. 1974) (Peck, J., concurring).

The Judgments of conviction are affirmed.

Before PICKETT, Senior Circuit Judge, and SETH and McWILLIAMS, Circuit Judges.