966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sabrina D. BLANKS, Defendant-Appellant.
 No. 91-6084.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1992.
 
 Before KENNEDY, SILER and KRUPANSKY, Circuit Judges.
 PER CURIAM:
 
 
 1
 The defendant-appellant Sabrina D. Blanks appealed from her conviction on two counts of unlawfully obtaining property by use of an unauthorized access device (Mastercard) in violation of 18 U.S.C. section 1029(a)(2). She was indicted on both counts on March 12, 1991 and her case was tried before a jury on May 6, 1991. The issue joined on appeal was whether the district court committed plain error in its response to an inquiry by the jury arising during its deliberations.
 
 
 2
 The following evidence was presented to the jury. In November, 1989, Blanks held temporary jobs as a clerk at Toys R' Us and Lionel Playworld in Chattanooga, Tennessee. On November 17, 1989, Margaret Gardner used a Mastercard at the Lionel Playworld. She later noticed that she did not have the card. Gardner recalled that the clerk wore the name tag "Sabrina" and that the sales clerk had engaged her in a distracting conversation about the toy she had bought and its intended recipient, Gardner's grandson. Blanks's manager testified that Gardner's sales slip bore Blanks's cashier number. This cashier number, which is known to only the employee and the manager, must be used to open the register or otherwise complete a sale.
 
 
 3
 Gardner received a statement reflecting $3,292.75 in unauthorized purchases on the card. One of these unauthorized purchases was for a ring at Lorch's Jewelry. An employee identified Blanks as appearing in the store to have the ring resized. The sales ticket also bore the Blanks's telephone number. Blanks's fingerprint was found on another receipt, a Service Merchandise receipt for an unauthorized purchase on the Gardner card. Her handwriting was identified on several other unauthorized purchases. The unauthorized use of the Gardner Mastercard formed the basis for the first count in the indictment and conviction.
 
 
 4
 On the morning of November 27, 1989, Elizabeth Weeks used her Mastercard at the local Toys R' Us. After a distracting conversation with the cashier about the gifts for her grandchildren, she, too, left without her card. She later learned that unauthorized purchases totaling approximately $3,100 had been made with the card. The handwriting expert confirmed that Blanks had signed nine sales receipts for purchases with Weeks's Mastercard. In addition, both the handwriting expert and Special Agent Terry Farmer of the United States Secret Service testified that Blanks attempted to smudge her fingerprints and disguise her handwriting when exemplars were taken.
 
 
 5
 On the afternoon of November 27, 1989, the same day that Weeks left her card at the store, the card was used to purchase furniture. The owner of the furniture store, Manufacturers Furniture Outlet, testified that the furniture charged to the person by the name of Elizabeth Weeks was delivered to Blanks's address later that same afternoon, around 4:00 or 5:00 p.m. Blanks's neighbor testified that 2506-B Laura Street was Blanks's address on the date the furniture was delivered, and that Blanks had mentioned to her that she would be getting some furniture. Electric Power Board records show power at 2506-B Laura Street in the defendant's name on the date the furniture was delivered.
 
 
 6
 The employee number on the sales draft indicated that Blanks handled Weeks's purchase. However, Blanks's supervisor could not tell the time of the purchase from the slip. In addition, Blanks was scheduled to work at the Toys R' Us during the evening shift, from 6:00 p.m. to 10:00 p.m., on November 27, 1989, the day Weeks's card was taken. As her supervisor testified, her timecard indicated that she did work that shift. The Weeks's Mastercard charges formed the basis of the second count and conviction.
 
 
 7
 The jury retired at 3:25 p.m. At 4:00 p.m. the jury directed the following communication to the court:
 
 Shift worked on 11-27 Toys R Us
 
 8
 Hours from ___ to ___.
 
 
 9
 The court stated: "I would propose to respond that you have to rely on your own recollection of the testimony in this case for the facts. Any objection to that?" Neither attorney objected. The communication was sent to the jury. The jury then returned guilty verdicts on both counts at 4:26 p.m.
 
 
 10
 Since the defense did not object to the court's response to the jury question, it must be evaluated under the plain error standard. Plain error refers to "particularly egregious errors and is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Frost, 914 F.2d 756, 771 (6th Cir.1990) (quotations omitted).
 
 
 11
 The general rule regarding a district court's response to jury questions was stated in United States v. Rowan, 518 F.2d 685 (6th Cir.), cert. denied sub nom., 432 U.S. 949 (1975):
 
 
 12
 In response to jury's questions after it has begun deliberating, however, a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision.
 
 
 13
 Rowan, 518 F.2d at 693.
 
 
 14
 Even when the jury requests instructions on a question of law, the propriety of a supplemental instruction is measured "by whether it fairly responds to the jury's inquiry without creating ... prejudice." United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir.1987) (quotations omitted).
 
 
 15
 In this case, the jury did not request to review or hear the supervisor's testimony, but posed a question couched in very specific terms: when Blanks worked the day that Weeks's credit card was stolen. Her supervisor had testified that she was scheduled to work the 6:00 to 10:00 p.m. shift and that her timecard reflected that she had worked that shift. Her supervisor also testified that Blanks's employee number was on Weeks's Mastercard receipt, which, according to Weeks's, had been signed in the morning. The hours that Weeks worked on the day in question was a question of fact for the jury to resolve in light of all the evidence presented. Thus, the district court's response to this question of fact carefully preserved the province of the jury while minimizing any prejudice to the defense or the prosecution. Its response was not an egregious error resulting in a miscarriage of justice.
 
 
 16
 Accordingly, the defendant's conviction and sentence is AFFIRMED in its entirety for the reasons presented herein.