**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0539n.06
Filed: August 1, 2007

**No. 06-3323**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

    **Plaintiff-Appellee,**

**v.**

**JEFFREY J. MOFFIE,**

    **Defendant-Appellant.**

                           /

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO**

**BEFORE:**    **CLAY and SUTTON, Circuit Judges; and GREER, District Judge.**[*]

    **CLAY, Circuit Judge.** Defendant, Jeffrey J. Moffie, appeals his conviction and sentence. Defendant was convicted of bank fraud, under 18 U.S.C. §§ 371 and 1344, for providing false and fraudulent financial information to Bank One in connection with five loan applications. Defendant was sentenced to a term of imprisonment of thirty-seven months and to three years of supervised release. For the reasons set forth below, we **AFFIRM** Defendant's conviction and sentence.

---

    [*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## BACKGROUND

Defendant and Dale Delgado ("Delgado") met in 1993 while working as securities brokers with Dean Witter. Defendant and Delgado left Dean Witter to form Cambridge Investment Group, Inc. ("Cambridge"), a financial and investment services company. Defendant began to get involved in the "consulting and investment banking business," (J.A. 1024), but "in the fall of 1994 . . . . decided not to renew his brokerage license, [and] all of his clients got transferred to [Delgado]," (J.A. 1015). Defendant

> ha[d] an idea of helping people get loans that had trouble getting loans, had been turned down many times before either for cash-flow problems or collateral problems or credit problems, and he thought if [Cambridge] bought Treasury Bonds and put them up as collateral for people, the bank would be more apt to approve that loan. And then [Cambridge] could take fees.

(J.A. 604) Defendant's banking and financing business focused on purchasing "the[ ] bonds on margin," at ten percent of the bonds' market value, and pledging the bonds as collateral in support of loans approved by Bank One. *Id.* Cambridge "prepare[d] financial statements, and [ ] would prepare the loan application to the bank, basically asking for a loan for [a] particular client." (J.A. 610) In the application process, Cambridge's clients and Bank One officials were led to believe that the collateral bonds were owned outright by Defendant, rather than on margin. Cambridge charged "fees for closing . . . . took a document preparation fee, . . . a closing fee . . . [and] points on [ ] the amount borrowed." (J.A. 608) In support of this security arrangement, Cambridge's clients were required to sign "a security agreement, . . . a pledge agreement, . . . a promissory note, . . . [and] an actual Leveraged Asset Program agreement." (J.A. 609)

Defendant's fraudulent scheme induced Bank One to grant numerous loans for substantial amounts. Indeed, Bank One made five loans between January 20, 1994, and November 7, 1994, ranging from $27,000 to $724,500. On November 17, 2004, a grand jury indicted Defendant and Delgado, charging them, under 18 U.S.C. §§ 371 and 1344, with one count of conspiring to commit bank fraud; one count of knowingly providing false and fraudulent financial information to Bank One in connection with loan applications; and two counts of transmitting fraudulent financial statements to Bank One. On December 1, 2004, Defendant pled not guilty. On September 20, 2005, the case proceeded to a jury trial.

At trial, the government presented evidence that Cambridge continuously misrepresented the ownership of the bonds and failed to disclose that the bonds were purchased on margin. At trial, Delgado and Gary Cerasi ("Cerasi"), a licensed certified public accountant, testified that they worked with Defendant to implement the bank fraud scheme. Veronica Fears ("Fears"), the owner of 15449 Euclid Avenue, Inc., a company based in Cleveland, Ohio, also testified that she arranged to borrow $680,400 from Bank One through Cambridge, and that she signed a promissory note to Cambridge for $760,000 because Defendant represented that Cambridge owned the collateral for the loan and that the value of the bonds was "700-some thousand dollars." (J.A. 116)

A Bank One commercial loan representative, Maria Cahill ("Cahill"), testified that Defendant applied for loans and that the loans were secured by bonds purportedly owned by Cambridge that were allegedly of equal to, if not greater than, the value of the loans. Cahill affirmed that she received monthly financial statements from Cambridge concerning the alleged market value of the

collateral bonds. Cahill indicated that if Bank One had known that the equitable value of the collateral bonds was less than the loan amount, a loan would not have been approved.

For his part, Defendant offered the testimony of Kenneth Lapine ("Lapine"), an attorney associated with Cambridge who specializes in banking and commercial law. Lapine asserted that Bank One should have known that the collateral bonds were purchased on margin because "there w[ere] indications that margined bonds were going to be involved as the collateral in the[ ] loan transactions." (J.A. 975) Notwithstanding Lapine's testimony, the record indicates that Bank One discovered Defendant's scheme accidently.

The record shows that Defendant objected to two evidentiary rulings at trial. First, the district court allowed the government to introduce as evidence portions of Defendant's deposition testimony from a civil case to recover loan assets that was filed by Bank One in the Court of Common Pleas of Cuyahoga County, Ohio. In connection with the civil case, Bank One subpoenaed Defendant and ordered him to appear for a deposition. In his deposition testimony, Defendant conceded that the collateral bonds were purchased on margin and that he failed to disclose this material fact to Bank One. Over Defendant's objection, the district court allowed the government to introduce portions of the deposition testimony as evidence at trial. Second, over Defendant's objection, the district court allowed the government to admit into evidence Federal Deposit Insurance Corporation ("FDIC") certificates to show that Bank One was insured by the FDIC through September 30, 1997.

Defendant made motions for judgment of acquittal on September 28, 2005, and October 3, 2005. These motions were denied by the district court. At the conclusion of the trial, the jury found

Defendant guilty of bank fraud. The district court sentenced Defendant to an imprisonment term of thirty-seven months and three years of supervised release. Defendant was also ordered to pay restitution in the total amount of $1,145,989. On appeal, Defendant challenges his conviction and sentence, and the district court's evidentiary rulings.

## DISCUSSION

### I. Reasonableness of Defendant's Sentence

Defendant challenges the reasonableness of his sentence. This Court reviews a sentence imposed by a district court for reasonableness. *Rita v. United States*, No. 06-5754, – S. Ct. –, 2007 WL 1772146, at \*9 (June 21, 2007); *United States v. Booker*, 543 U.S. 220, 261-62 (2005); *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005); *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006). The Court reviews the district court's interpretations of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Williams*, 411 F.3d 675, 677 (6th Cir. 2005); *United States v. Burke*, 345 F.3d 416, 428 (6th Cir. 2003). The Court defers to the district court's application of the sentencing guidelines to the facts. *United States v. Charles*, 138 F.3d 257, 266 (6th Cir. 1998).

In this case, the district court made a finding of fact concerning Bank One's total loan loss amount. Based on this finding, the court increased Defendant's base offense level from level six to level eleven. Defendant argues that the increased offense level violates his Sixth Amendment rights because the loan loss amount was never submitted to the jury. We find Defendant's argument to be unpersuasive.

"*Booker* did not eliminate judicial fact-finding." *United States v. Coffee*, 434 F.3d 887, 898 (6th Cir. 2005). "It is clear under the law of this Circuit that a district court may make its own factual findings regarding relevant sentencing factors, and consider those factors in determining a defendant's sentence[.]" *United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006) (citing *Coffee*, 434 F.3d at 897-98). "[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker*, 543 U.S. at 233. Simply put, *Booker* does not bar the district court from calculating and considering a loan amount provided that the sentencing guidelines are used as advisory and not mandatory. Post-*Booker*, a district court may enhance a defendant's sentence "based upon facts not found by a jury, provided they do not consider themselves required to do so." *United States v. Davis*, 397 F.3d 340, 352 (6th Cir. 2005) (Cook, J., concurring); *see also United States v. Kosinski*, 480 F.3d 769, 777 (6th Cir. 2007).

In the instant case, the record clearly indicates that the district court properly considered the guidelines as advisory, and calculated the loan loss amount based on evidence in the record. (J.A. 1130) Therefore, we find that the district court properly calculated Defendant's loan loss amount.

## II. FDIC Certificates

The record shows that the government presented FDIC certificates at trial to show that Bank One was insured by the FDIC through September 30, 1997. Defendant objected to the certificates arguing that the certificates failed to cover all relevant periods because "allegations in th[e] indictment run from January 1994 through some time in 1998." (J.A. 906) The district court admitted the certificates over Defendant's objection. On appeal, Defendant argues that the period

of the conspiracy exceeds the period covered by the FDIC certificates, and that "[w]ithout evidence [that] Bank One was a federally insured organization for all of the periods alleged in the Indictment the district court would have no jurisdiction to review and decide this matter." (Def. Br. at 20)

An essential element that the government must prove "for a conviction for bank fraud under section 1344(1)" is "that the financial institution was insured by the FDIC." *United States v. Hoglund*, 178 F.3d 410, 413 (6th Cir. 1999) (citing *United States v. Brandon*, 17 F.3d 409, 424-25 (1st Cir. 1994)); *Cf. United States v. Sandles*, 469 F.3d 508, 513 (6th Cir. 2006) (holding that "[t]he Government must prove that the deposits of the bank were insured by the FDIC at the time that [Defendant] robbed the bank."). Since this Court has found that "an FDIC certificate is kept in the ordinary course of a banking business and. . . is an admissible business record," the district court properly admitted the FDIC certificates to show that Bank One was insured by the FDIC through September 30, 1997. *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir. 1975).

In this case, all material conduct in furtherance of the bank fraud took place before September 30, 1997, except for a "telephonic discussion with . . . Bank One" on December 22, 1997. (J.A. 23) This Court has repeatedly found that certificates of FDIC coverage that pre-date or post-date the criminal incident may be sufficient to prove a bank's FDIC-insured status. *See, e.g.*, *United States v. Couch*, No. 94-6019, 1995 WL 583386, at *8 (6th Cir. Oct. 3, 1995) (unpublished case) (holding that testimony from branch manager and the introduction of post-dated FDIC certificate is sufficient evidence); *see also Rowan*, 518 F.2d at 693 (holding that testimony from branch manager and the introduction of pre-dated FDIC certificate is sufficient evidence, even though the branch manager "did not know [based on] his own personal knowledge that the premiums were paid"); *but see*

*Sandles*, 469 F.3d at 516-17 (finding that "[t]he Government presented only one piece of competent evidence as to the bank's insured status," namely, an affidavit, "and that [the affidavit] was insufficient to establish a necessary element of a federal bank-robbery charge."); *United States v. Ali*, 266 F.3d 1242, 1245 (9th Cir. 2001) (noting that "'[d]espite the fact that FDIC-insured status is an express requirement of the applicable statutes, an essential part of a valid indictment, and an indispensable item of proof of an offense, prosecutors have been extremely lax in the treatment accorded this element.'") (quoting *United States v. Platenburg*, 657 F.2d 797, 799 (5th Cir. 1981) (alteration in original).

Although Defendant's bank fraud continued after September 30, 1997, the record clearly shows that all loans were requested, processed or procured by September 30, 1997. In short, the principal criminal activities which form the basis of Defendant's conviction overwhelmingly took place before September 30, 1997. Since this Court is charged with "[c]onstruing the evidence and drawing reasonable inferences in the light most favorable to the Government," we find that it is reasonable to infer that the branch was FDIC-insured during the relevant time periods. *Rowan*, 518 F.2d at 693. Accordingly, we find that Defendant's argument with respect to the FDIC certificates to be without merit.

## III. Motions for Judgment of Acquittal

Defendant argues that the district court erred in denying his motions for judgment of acquittal. The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007).

Defendant maintains that "[r]epresentatives from the bank were made aware, albeit by accident, [that] the bonds pledged as collateral had been purchased on margin and were not owned outright." (Def. Br. at 24) During the trial, Defendant made two motions for judgment of acquittal. The first motion was made when the prosecution rested its case. In support of this motion, Plaintiff argued that employees at the bank either knew or should have known that the collateral bonds were purchased on margin. This motion was based primarily on the testimony of a former Bank One employee, Judith Kuclo, which indicated that Cambridge inadvertently revealed that the collateral bonds were purchased on margin in one of the monthly financial statements. Defendant renewed the motion for judgment of acquittal after all proofs had been entered. The second motion relied on Lapine's testimony, which indicated that Bank One should have been aware of the use of margin bonds based on information contained in financial statements. The district court found, and we agree, that the motions for judgment of acquittal were meritless.

Under 18 U.S.C. § 1344:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. "The three elements required for a conviction for bank fraud under section 1344(1) are: (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC." *Hoglund*, 178 F.3d at 413 (citing *Brandon*, 17 F.3d at 424-25.

In this case, the government introduced ample evidence that Defendant intentionally devised a fraudulent scheme by providing false financial information to Bank One. Defendant intentionally misrepresented that Cambridge was holding valuable bonds as collateral for loans. Numerous government witnesses consistently described in detail how bonds purchased at margin were pledged as collateral for loans and that Cambridge overstated the value of the bonds in loan applications and monthly financial statements. Since the government presented ample testimony and evidence, we find that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis*, 473 F.3d at 681 (internal quotation marks and citation omitted). Therefore, the district court properly denied Defendant's motions for judgment of acquittal.

## IV.    Deposition Testimony

Last, Defendant challenges the district court's evidentiary ruling in connection with the admissibility of his deposition testimony. This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (quoting *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005). "[T]his Court does not disturb rulings on the admissibility of evidence unless the Court is left with the definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached." *Id.* (internal

quotation marks and citation omitted). "An abuse of discretion will be found if the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *Id.* (citation omitted). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled." *Id.* (internal quotation marks and citation omitted). "A new trial is not required unless the error affects substantial rights." *Id.* (citing Fed. R. Crim. P. 52).

Defendant argues that his deposition testimony from a civil case in Ohio state court was inadmissible in this case because the deposition was not signed by the deponent as required under Ohio R. Civ. P. 30(E). Notably, Defendant cites no case law in support of this argument. We find Defendant's argument is unpersuasive. Insofar as this case was litigated under federal law in the Northern District of Ohio – and not under state law in an Ohio state court – Ohio state civil procedure rules are simply not applicable. "Although state law may be borrowed if appropriate, specific aberrant or hostile state rules do not provide appropriate standards for federal law." *North Dakota v. United States*, 460 U.S. 300, 318 (1983) (internal quotation marks and citation omitted).

In this case, the government argues that Defendant's deposition transcript is admissible party-admission evidence under Fed. R. Evid. 801(d)(2)(A). In pertinent part, this Rule provides:

> A statement is not hearsay if --
> . . . The statement is offered against a party and is (A) the party's own
> statement, in either an individual or a representative capacity or (B)
> a statement of which the party has manifested an adoption or belief
> in its truth . . . .

Fed. R. Evid. 801(d)(2). The record indicates that Defendant testified in his deposition as follows:

> Question:      . . . Were the bonds margined?
> Defendant:    Yes.

| | |
|---|---|
| Question: | So do you recall how much the bonds were margined for, what the amount of margin was? |
| Defendant: | 90 percent. |
| Question: | Did you know . . . that 90 percent of the bonds had been margined? |
| Defendant: | Yes |
| Question: | When were they margined? |
| Defendant: | Pretty much at the beginning. |
| Question: | Did you tell anyone from Bank One that the bonds were margined? |
| Defendant: | No. |

(J.A. 890) Like the district court, we find that Defendant's testimony is admissible because it constitutes a party admission. *See, e.g*, *Schweitzer v. Teamster Local 100*, 413 F.3d 533, 538 (6th Cir. 2005). Therefore, the district court did not abuse its discretion in allowing the government to read portions of Defendant's deposition to the jury.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction and sentence.