**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0159n.06
Filed: March 21, 2008

**Nos. 06-1740/06-2036**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE CRUZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES CHERRY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MERRITT, DAUGHTREY, and MOORE, Circuit Judges.

**PER CURIAM.** Defendants Jose Cruz and James Cherry appeal from their convictions for conspiracy to distribute and distribution of marijuana, in violation of 21 U.S.C. § 841(b)(1)(C); use of an explosive device during or in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(ii); and use of a firearm during or in relation to a drug-trafficking crime, in violation 18 U.S.C. § 924(c). Cherry contends that the

testimony of cooperating witnesses was insufficient to support the jury's verdict; that the government failed to establish that the "Molotov cocktail" he allegedly used in aid of the drug-trafficking offense was a "destructive device" within the contemplation of § 924(c)(1)(B)(ii); and that the district court erred in refusing to declare a mistrial on the basis of misjoinder of defendants. Cruz assigns error to the district court's denial of his request for an instruction on the lesser included offense of simple possession of marijuana. Both defendants argue that the prosecutor engaged in improper "bolstering of" (Cherry) or "vouching for" (Cruz) a government witness. We find no reversible error in connection with any of these claims and, therefore, affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Cherry and Cruz were named along with 27 other defendants in multi-count indictments charging various gun and drug violations against members of the Latin Counts, a southwest Detroit street gang. The indictment in this case was returned against seven co-defendants, including Cruz and Cherry, and grew out of a pair of home invasions that occurred in the summer of 2001. The evidence in the record established that, acting on information that there was more than $10,000 worth of marijuana stored in a house on Stone Street, Cherry, Cruz, and their accomplices planned and executed the invasion of that house and, using firearms, took a quantity of marijuana from the residence. They committed a similar assault on a residence on Bayside that was also reputed to house a stash of marijuana and, using a Molotov cocktail and carrying guns, took approximately 14

- 2 -

pounds of marijuana from that building. Four of the seven co-defendants went to trial together; the other three testified for the government. The jury convicted Cherry and Cruz of conspiracy (count one), use of a destructive device (count two), and use of a firearm during a drug-trafficking crime (count three). Both defendants were sentenced to one day on the first count, 360 months on count two, and 60 months on count three, to run consecutively. They now appeal their convictions, based on the claims discussed below.

## DISCUSSION

### Insufficiency of the Evidence

At trial, the district court denied defendant Cherry's motion, filed pursuant to Federal Rule of Criminal Procedure 29, for judgment of acquittal. He now assigns as error the court's ruling that the evidence was sufficient to support the jury's verdict of conviction. We review a district court's refusal to grant a Rule 29 motion *de novo*, see United States v. Kone, 307 F.3d 430, 433 (6th Cir. 2002), to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Grubbs, 506 F.3d 434, 438 (6th Cir. 2007) (citing United States v. Blakeney, 942 F.2d 1001, 1010 (6th Cir. 1991)(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979))). We must "resolve all reasonable inferences in favor of the government," United States v. Layne, 192 F.3d 556, 567 (6th Cir. 1999), and we "will reverse a judgment for insufficiency of the evidence only if, viewing the record as a whole, the judgment is not supported by substantial and

competent evidence." Grubbs, 506 F.3d at 438 (internal citation and quotation marks omitted). "But while this means 'we do not weigh the evidence' or 'assess the credibility of the witnesses,' United States v. Wright, 16 F.3d 1429, 1440 (6th Cir. 1994), this Court's power of review in these cases is not toothless. We have defined substantial evidence as being 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.'" Grubbs, 506 F.3d at 438-39 (citing United States v. Martin, 375 F.2d 956, 957 (6th Cir. 1967)).

Cherry's general challenge to the evidence is actually a challenge to its weight rather than its legal sufficiency. He asserts that the government's case was "heavily" based on the testimony of the cooperating co-defendants – all of whom "believed that they had to please the attorney for the government in order to obtain a sentence reduction" in their own cases, had been incarcerated together, and were aware of each other's pretrial statements – rather than on "physical evidence or independent witnesses." But he offers no legal support for the proposition that the jury's verdict can be overturned on this basis, instead citing Justice Jackson's concurring opinion in Krulewitch v United States ruminating on his view that "[a] co-defendant in a conspiracy trial occupies an uneasy seat," but also noting that "in federal practice there is no rule preventing conviction on uncorroborated testimony of accomplices." 336 U.S. 440, 454 (1949). In this case, the defendant had an opportunity to cross-examine the government's witnesses, there is no evidence of collusion, the accomplice testimony was corroborated by other proof in the record, and the

jury was properly advised with regard to such testimony. We conclude that, overall, the government's case clearly met the Jackson v. Virginia standard.

Defendant Cherry's specific challenge to the sufficiency of the evidence concerns the proof that he employed a "destructive device," as that term is used in 18 U.S.C. § 921(a)(4), which defines it as "any explosive, incendiary, or poison gas (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses." The indictment charged the defendants with aiding and abetting the use of "an explosive device, to wit: a Molotov cocktail, during and in relation to a drug trafficking crime." Cherry argues both that the witnesses described only a rudimentary device that was not, in fact, a "Molotov cocktail" and that the government did not prove that it qualified as a destructive device under the statute.

However, the record contains testimony by one of the accomplices that the members of the conspiracy "got gasoline for [the device] to use a 22-ounce Budweiser bottle. So, you know, you pour the gasoline in there and you stuff a rag in it to use the Molotov cocktail." Another witness likewise referred to the purchase of "gas for a Molotov cocktail." Indeed, the object as described clearly meets the definition provided by the Oxford English Dictionary: "A makeshift incendiary device for throwing by hand, consisting of a bottle or other breakable container filled with flammable liquid and with a piece of

cloth, etc., as a fuse." Despite the defendant's concern with the proper construction of the device in question and his corollary contention that the improper placement of the wick made it something other than a Molotov cocktail, we need not parse the definition of a Molotov cocktail so closely as to debate the proper attachment of its fuse. The object that witnesses described in this case comports sufficiently closely with the dictionary definition to qualify as a Molotov cocktail.

Furthermore, we have used the terms "Molotov cocktail" and "fire bomb" interchangeably. See United States v. Rowan, 518 F.2d 685, 688 (6th Cir. 1975). Thus, the testimony provided offers adequate evidence for a reasonable jury to conclude that the device in this case was clearly a device that met the definition set out in § 921(a)(4). We therefore find that the evidence also meets the Jackson v. Virginia standard in this respect.

**Lesser-included-offense Jury Instruction**

Defendant Cruz sought a lesser-included-offense instruction on simple possession, which the district court denied. "The District Court's decision to deny Appellant's request for a lesser-included-offense jury instruction is reviewed for abuse of discretion." United States v. Colon, 268 F.3d 367, 373 (6th Cir. 2001) (citing United States v. Ursery, 109 F.3d 1129, 1136 (6th Cir. 1997)). As we have noted:

> A criminal defendant is entitled to an instruction on a lesser-included-offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the

> element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.

Colon, 268 F.3d at 373.

Cruz contends, and the United States does not dispute, that a proper request was made, satisfying the first prong of the Colon test. However, without regard to the third and fourth prongs, Cruz's challenge must fail because he cannot establish the second prong of the test, given the fact that the elements of simple possession are not the same as those of conspiracy. Cruz begs the question by asserting that "possession with the intent to distribute and simple possession" have the same elements, which simply is not the issue in this case. He was convicted of "conspiracy to distribute and distribution of marijuana," not possession with intent to distribute. The elements of simple possession are "(1) knowingly or intentionally, (2) possessing, (3) a controlled substance." Id. at 375. In contrast, the elements of the conspiracy charge are: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." Id. Just as in Colon, Cruz "focuses his argument on the possession aspect of the charge and fails to acknowledge that the charge is **not** possession with intent to distribute, but instead ***conspiracy*** to distribute and possess with intent to distribute." Id. (emphasis in the original). The Colon court's holding that simple possession is not a lesser included offense of conspiracy to distribute a controlled substance thus controls in this case.

## Improper Vouching or Bolstering

Both Cherry and Cruz contend that the prosecution improperly engaged in what they refer to as "bolstering" or "vouching for" government witnesses by eliciting testimony from Special Agent Joseph Callahan to corroborate the testimony of other government witnesses, particularly the cooperating co-defendants. In making this argument, they not only use these terms interchangeably but also misconstrue the meaning of both concepts. In fact, we have previously distinguished between vouching and bolstering, noting that:

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. [I]mproper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury. . . . On the other hand, [b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.

United States v. Trujillo, 376 F.3d 593, 607-08 (6th Cir. 2004) (internal citations and quotation marks omitted, alterations in the original). In this case, because the prosecutor was not indicating a personal belief in Agent Callahan's credibility or personal knowledge of facts not before the jury, no improper vouching occurred. Nor does the record establish improper bolstering of the agent's testimony.

The testimony that defendants now challenge reads in relevant part:

> Q. [by the AUSA]: It would, so let me recharacterize this. The work with Mr. Raynor as a cooperating defendant took place over approximately a year and a half, correct?
>
> A. [by Agent Callahan]: Yes, ma'am.
>
> Q. Okay, and would it be fair to characterize that year and a half as building up the use that you had for Mr. Raynor?
>
> A. It would be fair to characterize that we did several things to corroborate --
>
> [Defense Counsel]: Objection
>
> The Witness: – and verify the information.
>
> [Defense Counsel]: Objection, Your Honor, this is --
>
> The Court: What's your objection?
>
> [Defense Counsel]: This is bootstrapping, ahh, it is attempting to – can we --
>
> The Court: No, just give me an objection.
>
> [Defense Counsel]: The legal objection is that it's improper, it certainly is a Crawford objection, and it's certainly --
>
> The Court: Overruled. Go on.
>
> The Witness: We did several things to verify and corroborate that information that was provided by Mr. Raynor, umm, to include arresting and interviewing, interrogating other defendants that were involved in other criminal activity with Mr. Raynor, such as Mr. Santillana, Santiago Santillana, who was arrested on a complaint and interviewed separately to include –
>
> [Defense Counsel]: Your Honor. Objection, this is vouching . . . .
>
> [AUSA]: This is foundation, Your Honor. I'll move on.

In United States v. Francis, we analyzed what kind of questioning qualifies as improper bolstering. 170 F.3d 546, 551 (6th Cir. 1999). There, we found improper bolstering to have occurred when a prosecutor repeatedly asked a law enforcement agent whether he had corroborated information obtained from a witness. See id. Crucially, the analysis in Francis turned on the fact that after stating that he had corroborated the

information, the agent provided little further detail to demonstrate how the corroboration occurred or what it consisted of. See id. We held that the mere assertion of corroboration without the provision of additional detail as to whether documents, searches, conversations, or other means offered supporting information "would lead a reasonable juror to believe that the prosecutor was implying a guarantee of truthfulness based on facts outside the record." Id.

The testimony challenged here simply does not meet the standard articulated in Francis. Instead of asking whether corroboration occurred, without more, the prosecutor focused on how the investigation unfolded and what kinds of techniques were used to collect evidence in the case. Such a line of inquiry produces precisely the kind of information about the source of corroboration that was lacking in Francis. Because no reasonable juror could have taken this testimony to conclude that "the prosecutor was implying a guarantee of truthfulness based on facts outside the record," no improper bolstering occurred in this case. Because there was no improper bolstering, the district court's denial of the defendant's motion for a mistrial on this basis was not error.

**Misjoinder of Defendants**

Prior to trial, the district court denied the defendants' motion for severance, filed pursuant to Federal Rule of Criminal Procedure 14, a ruling that we review for "a clear abuse of discretion." United States v. Caver, 470 F.3d 220, 237 (6th Cir. 2006). Defendant Cherry later moved for a mistrial on the basis of misjoinder of defendants, a

motion that was also denied by the district court and is likewise reviewable for abuse of discretion.  See id. at 243.

Cherry's request for a mistrial was based on testimony solicited by the other defense attorneys during the cross-examination of a government witness that, he claimed, prejudiced his defense.  During the trial, Cherry sought to defend himself by asserting that in the absence of physical evidence to support the charges, and with the majority of the evidence against him offered by co-conspirators who received favorable sentences, the only evidence offered to support his conviction was unreliable.  He contends that co-defendant Booth's duress defense, as well a brief reference to his involvement in "one or two" unrelated home invasions, elicited by co-defendant Contreras's attorney, "placed him in the untenable position of having to testify to rebut a co-defendant's case."  On appeal, he points to the prosecutor's concession that "the cross-examination of [co-defendant] Anthony Contreras helped the government make a case on Mr. Cherry"  to support his contention that the district court's failure to grant a mistrial was error.

The prosecutor's assessment notwithstanding, we find no abuse of discretion in connection with the district court's rulings.  The denial of Cherry's pre-trial motion for severance was consistent with the presumption favoring joint trials when the charges are to "be proved by the same evidence and result from the same acts."  United States v. Beverly, 369 F.3d 516, 534 (6th Cir. 2004).  Although joinder in this case did lead to the introduction of testimony that might not have come to light if Cherry's co-defendants had

been tried separately, this evidence cannot be said to have denied Cherry the right not to testify. Witnesses other than Contreras offered plentiful incriminating evidence without reference to Cherry's past acts; even in the absence of the challenged testimony, Cherry would have faced a difficult decision as to whether or not to take the stand. That Cherry ultimately opted not to testify militates against his assertion that his right against self-incrimination was somehow compromised by the testimony of his co-defendants.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court as to both defendants in this case.