*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0437p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN E. SANDLES,

*Defendant-Appellant.*

Nos. 02-2466/2492

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 00-80590; 00-80280—
George C. Steeh, Denise Page Hood, District Judges.

Submitted: July 28, 2006

Decided and Filed: November 27, 2006

Before: BATCHELDER, CLAY, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Curtis R. Williams, Detroit, Michigan, Melvin Houston, Detroit, Michigan, for Appellant. Patricia G. Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. John E. Sandles, Adelanto, California, pro se.

---

**OPINION**

---

ROGERS, Circuit Judge. This appeal consolidates two related bank-robbery cases concerning Defendant John Sandles, appearing pro se on appeal. Sandles, who has been diagnosed with bipolar disorder, was on supervised release from a previous bank-robbery conviction when he committed the robbery at issue in this case. The Government and Sandles agree that Sandles confessed to robbing a branch of Michigan National Bank in February 2000, in Dearborn, Michigan. At the trial, over which Judge George Steeh presided, the jury convicted Sandles of bank robbery, notwithstanding his assertion of an insanity defense and his testimony that the Angel Gabriel told him to rob the bank and give the money to the poor. After Sandles' conviction in Judge Steeh's court, Judge Denise Hood, with respect to Sandles' first bank-robbery conviction, dismissed Sandles' petition for a writ of coram nobis and revoked his supervised release. Judge Hood sentenced Sandles to fifteen months of imprisonment. Judge Steeh then sentenced Sandles to 151 months of imprisonment, with the sentence to run concurrently with the sentence imposed by Judge Hood.

1

We affirm in part and reverse in part. Sandles makes eight cognizable arguments on appeal, challenging both his conviction and sentences. One of Sandles' arguments concerning his conviction is meritorious: the Government failed to introduce sufficient evidence at trial that the Michigan National Bank's deposits were insured by the FDIC at the time of the robbery, a required element of a federal bank-robbery charge. Therefore, we reverse Sandles' conviction for bank robbery. But we affirm the district court's denial of Sandles' motion to dismiss for alleged violations of his rights under the Speedy Trial Act, and we affirm the district court's dismissal of Sandles' writ of coram nobis concerning his prior bank-robbery conviction. We remand this case for a new trial. *See Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988) (holding that the Double Jeopardy Clause does not prevent retrial if an appellate court concludes that evidence was erroneously admitted and that there would have been insufficient evidence to convict without that improper evidence).

## I.

John Sandles entered a Dearborn branch of the Michigan National Bank on February 3, 2000. He told teller Lori Ruszkiewicz, "Be quiet, give me the money or I will make it worse for you." According to Ruszkiewicz, Sandles did not request a specific amount of money, but according to Sandles he asked for $3,000. After Ruszkiewicz emptied her first cash drawer, he requested more money. She gave him more from the second drawer. Sandles received a total of $2,317, and he quickly and quietly left the bank.

The bank's surveillance cameras took three photographs of Sandles at the teller window. Ultimately, Sandles' federal probation officer, Darcia Cheeks, identified him on a flyer that she saw in August 2000. When the police questioned Sandles, he admitted that he was the robber. He told the police, in a written confession, that

> [m]y primary means of communicating was with my angels; however, my angels gave me assurance and support. In return, I felt that I had to prove that I was on the side of righteousness. I believed at the time, that the bank represented evil and that I could prove that I was a messenger of God by robbing the bank.

He wrote that he gave the money to "poor and needy people."

On August 17, 2000, a grand jury returned an indictment against Sandles. The grand jury charged him with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). Judge Steeh presided over the trial. With the assistance of stand-by counsel, Sandles represented himself.

Two events at trial are relevant to the issues that Sandles raises in this appeal:

First, the Government called Rhonda York to testify that the bank's deposits were insured by the FDIC at the time of the robbery. York was a senior investigator and responsible for the bank's security. When the Government asked York whether the bank's deposits were insured by the FDIC, Sandles objected to the lack of foundation demonstrating York's personal knowledge. The court stated, "In the event the testimony does not establish relevance to the last question[,] the Court will entertain a motion to strike." The Government then presented York with "Government's Exhibit 4," which was a packet of papers covered in plastic, containing an FDIC certificate, dated 1987. When asked whether that certificate demonstrated that the bank's deposits were FDIC-insured in February 2000, York stated, "As far as I know it does." Sandles objected to a lack of foundation. The court sustained his objection and struck the preceding question and answer. The Government then asked, "putting aside the certificate," whether York was personally aware that the bank's deposits were FDIC-insured on February 3. She answered that they were. When Sandles made another objection to lack of foundation, York stated that her personal knowledge was based on having seen "these certificates and knowing that we have been certified over 23 years experience

in the bank [sic] and that we established this at each of our deposit windows at our Teller windows with signs indicating that we are insured."

During the Government's closing argument, the Government mentioned an affidavit by Valerie Best, the Assistant Executive Secretary of the FDIC. In her affidavit, Best testified that she had searched FDIC records and uncovered nothing indicating that the bank's insured status had been terminated. Sandles objected because the affidavit had not been admitted at trial. The Government argued that the affidavit was part of the packet covered in plastic that the court admitted as Exhibit 4 and that the defense reviewed the packet prior to the admission of the documents. The court overruled the defense objection and found that the affidavit had been admitted into evidence, even though there had been no mention of the affidavit at trial. The Government then told the jury during closing, "The [affidavit that] is attached to the certificate further indicate[s] specifically that the branch that was robbed was insured by the FDIC, including the date of February 3rd of 2000, the date of the bank robbery."

Second, Sandles complained on Tuesday, the second day of trial, that he was not receiving his anti-psychotic medication from prison personnel. After two witnesses finished testifying, the court heard Sandles' argument concerning his medication. Sandles stated that he had not received his medication, which he normally took twice a day, since that past Thursday. He said that he was starting to experience "emotional overload." The United States Marshal informed the court that he had contacted the county jail, and the court stated, "We'll trust that results in you receiving medication."

Four motions made at trial are also relevant to this appeal. First, the district court denied Sandles' motion to dismiss. Sandles argued for dismissal because the bank-robbery statute which he had been charged with violating had been repealed by 50 U.S.C. § 1601 and because the Government did not prove that the bank's FDIC insurance covered robbery and theft. Second, the district court denied Sandles' motion to dismiss on the grounds that his trial's delay violated the Speedy Trial Act. Third, the district court denied Sandles' request that the court include an additional sentence in the jury instruction concerning Sandles' insanity defense. Sandles wanted the district court to instruct the jury that one can be insane, despite one's knowledge that the act was illegal, if one believed his conduct was morally justified. The district court noted, however, that Sandles was permitted to make his argument as to what "wrongfulness" in the instruction meant. Finally, at some point before trial, the district court granted the Government's request to sequester certain defense witnesses.

The jury found Sandles guilty in December 2001. Prior to the robbery for which he was convicted, Sandles had been convicted of another bank robbery in Wisconsin. *See United States v. Sandles*, 80 F.3d 1145 (7th Cir. 1996). He was on supervised release at the time of the second robbery. During the pendency of the proceedings concerning his supervised release, in which Judge Hood presided, Sandles filed a petition for a writ of coram nobis, arguing that the Eastern District of Wisconsin incorrectly held, because of misrepresentations allegedly made by the Government, that violence or intimidation was required under 18 U.S.C. § 2113(b). The district court denied the petition for lack of jurisdiction. Judge Hood revoked his supervised release and, on November 21, 2002, imposed a fifteen-month sentence.

Judge Steeh sentenced Sandles on November 27, 2002, to 151 months of imprisonment and assessed restitution in the amount stolen from the bank. Judge Steeh imposed the sentence under a mandatory Guidelines scheme. Although Judge Hood held that she did not have any objections to Sandles' sentence running consecutively to the sentence to be imposed by Judge Steeh, Judge Steeh stated that the sentences would run concurrently. Sandles filed timely notices of appeal.

## II.

Sandles' conviction cannot stand because the Government failed to proffer sufficient evidence that the Michigan National Bank's deposits were insured by the FDIC. It was plain error for the district court to admit the affidavit of Valerie Best, and, without this evidence, there was insufficient evidence to convict Sandles. Because we reverse on this ground, it is unnecessary to consider certain of Sandles' other arguments, specifically that: (1) the district court should have, sua sponte, inquired into Sandles' ability to represent himself after Sandles claimed that he had not received his medication; (2) the district court improperly instructed the jury concerning the insanity defense; (3) the sequestration of witnesses abridged Sandles' right to a public trial; and (4) Sandles is entitled to resentencing for the second bank-robbery conviction under an advisory Guidelines regime. However, Judge Steeh properly denied Sandles' motion to dismiss on grounds that the Government violated his rights under the Speedy Trial Act, and Judge Hood properly dismissed Sandles' coram nobis petition.[1]

### A.    *Sufficiency of the Evidence*

Because there was not sufficient evidence presented at trial that the bank's deposits were insured by the FDIC and because the Government's use of an affidavit to present sufficient evidence violated Sandles' right to confront witnesses against him, Sandles' conviction must be reversed. The Government must prove that the deposits of the bank were insured by the FDIC at the time that Sandles robbed the bank. *See United States v. Wood*, 780 F.2d 555, 556 (6th Cir. 1986) (per curiam).[2] The Government argues that there were three pieces of evidence presented at trial from which a reasonable jury could find beyond a reasonable doubt that the bank's deposits were insured by the FDIC: (1) York's personal knowledge of FDIC stickers at the bank deposit windows; (2) York's statement that the bank's deposits were FDIC-insured; and (3) Best's affidavit that her search of the FDIC records did not reveal that the bank's insurance had expired. Only York's testimony to having seen the stickers was competent evidence, and it was not, standing alone, sufficient evidence of the bank's insured status. The Government failed to demonstrate that York had personal knowledge that the bank's deposits were FDIC-insured, and the Government's use of

---

[1]We must, of course, also address Sandles' arguments that the district court should have dismissed his case concerning his most recent bank-robbery charge because, if we were to agree with him, we would have to dismiss the indictment instead of remanding for a new trial. No dismissal is required. Sandles argued in the district court that the court had to dismiss because (1) the bank's FDIC insurance did not cover robbery and (2) 50 U.S.C. § 1601 repealed 18 U.S.C. § 2113, the statute that Sandles was charged with violating. First, nothing in 18 U.S.C. § 2113 required the bank's FDIC insurance to cover robbery, so the Government did not have any obligation to demonstrate that the bank's insurance covered robbery. *See* 18 U.S.C. § 2113(f). Second, 50 U.S.C. § 1601 in no way repeals the federal bank-robbery statute. Instead, § 1601 concerns the termination of executive powers concerning a 1976 declaration of national emergency. *See United States v. Rollins*, 301 F.3d 511, 520-21 (7th Cir. 2002). The district court, therefore, properly denied Sandles' motion to dismiss.

[2]Although the Government sought to prosecute this case only under the theory that the bank's deposits were insured by the FDIC, the Government could have sought to prove that the bank was a member of the Federal Reserve System, or organized or operating under the laws of the United States. 18 U.S.C. § 2113(f) includes within the definition of "bank" "any member bank of the Federal Reserve System, and any bank . . . organized or operating under the laws of the United States." The Government in its indictment, however, only sought to demonstrate that the bank's deposits were insured by the FDIC. The district court also instructed the jury only as to the FDIC definition of "bank." Although the Michigan National Bank was likely organized and likely operates under the laws of the United States, the Government did not seek to prove this at trial.

an affidavit to establish the FDIC-insured element violated Sandles' constitutional right to confront witnesses against him.[3]

York's personal knowledge of one fact—that the bank holds itself out as insured—is not by itself sufficient to establish that the bank's deposits were insured by the FDIC. York's testimony that she had viewed FDIC stickers at the bank's deposit windows was admissible evidence because York had seen the stickers and thus had personal knowledge of their existence. *See* Fed. R. Evid. 602. But, although we have previously held that a witness's viewing of the FDIC stickers along with other evidence is sufficient for a jury to find that a bank's deposits are FDIC-insured, we have never held that the presence of FDIC stickers alone is sufficient evidence that the bank's deposits were insured by the FDIC. For instance, in *United States v. Babb*, 77 Fed. Appx. 761, 768-69 (6th Cir. 2003) (per curiam), this court held that testimony from a Michigan National Bank employee that there were signs around the bank indicating that the bank's deposits were FDIC-insured was, among other pieces of evidence, sufficient to find that the bank's deposits were insured by the FDIC. But *Babb* is distinguishable because there was also evidence in that case from two other employees testifying that the bank's deposits were FDIC-insured and testimony that the word "national" in the bank's title indicated that it was insured.[4] *See id.*; *see also United States v. Maner*, 611 F.2d 107, 110 (5th Cir. 1980) (employees testified that they had viewed certificate of insurance). Simply put, *some* evidence is not necessarily *sufficient* evidence—the Government must proffer more than evidence of FDIC stickers to prove that the bank's deposits were insured by the FDIC.

Although the Government argues that York's testimony that the bank's deposits were FDIC-insured was an additional piece of evidence that the jury could properly consider, York never established her personal knowledge of that fact. The Government is correct that a witness's unchallenged statement that the bank's deposits are FDIC-insured is sufficient evidence for a jury to find that a bank's deposits are insured by the FDIC. *See Wood*, 780 F.2d at 557; *United States v. Gallop*, 838 F.2d 105, 111-12 (4th Cir. 1988). But the Government forgets that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. In both *Wood* and *Gallop*, the defendants did not argue that the witness lacked personal knowledge, and thus the statements that the bank's deposits were FDIC-insured were admissible. But, here, Sandles repeatedly objected to York's lack of personal knowledge of the bank's insured status, and thus the testimony was admissible only if the Government established that York had personal knowledge that the bank's deposits were FDIC-insured. This the Government did not do.

The Government argues that York had personal knowledge that the bank's deposits were FDIC-insured by testifying that she had seen the 1987 FDIC certificate at the bank, that she knew that the bank had been insured for over twenty-three years, and that she had viewed the stickers at the bank's deposit windows. These arguments are unavailing. First, the district court correctly

---

[3]We consider the issue of insufficient evidence even though Sandles did not object after the close of all of the evidence. Referring to *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998), the Government argues that we should review this sufficiency question for "miscarriage of justice" because Sandles did not renew his motion for acquittal after the close of all evidence. On the peculiar facts of this case, however, Sandles sufficiently objected to the Government's failure to prove the bank's insured status. Sandles objected to the lack of evidence on the FDIC-insured element at the close of the Government's case and in a motion after the jury convicted him. The Government never mentioned his failure to object in its responsive motion, and the district court issued a four-page written order denying the motion. Sandles' repeated objections at trial, his motion at the close of the Government's case, and his motion after his conviction gave the district court an adequate opportunity to consider the issue and rule on the merits.

[4]Even if is true that the word "national" in a bank's name indicates that it is insured, we may not take judicial notice of this fact because whether the bank's deposits are FDIC-insured is an element of the offense for the jury to decide. *See United States v. Mentz*, 840 F.2d 315, 322 (6th Cir. 1988) (stating that a district court cannot take judicial notice of a bank's FDIC status without informing the jury that it can, but does not have to, accept that noticed fact).

determined that York had no personal knowledge concerning the meaning of the 1987 insurance certificate. Moreover, the bank's insured status more than twenty years before the robbery does not establish that the bank's deposits were FDIC-insured at the time of Sandles' robbery. *See United States v. Shively*, 715 F.2d 260, 265 (7th Cir. 1983) ("But there is no way in which a certificate of insurance issued in 1969 could be taken to refer to a bank's insured status in 1978 without any other evidence."). Similarly, York's knowledge that the bank had been insured in the past does not mean that the bank was insured at the time of the robbery. A witness cannot establish personal knowledge of a fact by merely saying that he or she has known that fact for a long time. Such a foundation is circular and does not establish why or how the witness knows the challenged fact. Finally, knowledge of FDIC stickers at the bank does not mean that one has knowledge of the bank's insured status. *See United States v. Cooper*, 375 F.3d 1041, 1044-45 (10th Cir. 2004) (noting that the district court held that a bank employee could not testify that she knew that the bank was insured merely because she had viewed FDIC stickers at the bank). The Government simply did not establish a proper foundation for York's testimony as to the bank's FDIC status.

The Government's final proffered piece of evidence—Best's affidavit—was not competent evidence because, even under plain error review, its use violated Sandles' right to confront witnesses against him. The district court found that it had admitted the affidavit of Valerie Best in a packet of papers as Exhibit 4, of which only the 1987 certificate was actually admitted when it was presented to York during her testimony; the affidavit in the packet was never mentioned until closing arguments. Best declared in her affidavit that her research of FDIC records did not indicate that the bank's insurance policy had been cancelled. We review this claim for plain error because Sandles did not object to the admission of the affidavit on the grounds that the affidavit's use violated his constitutional right to confront witnesses against him. *See United States v. Matheny*, 450 F.3d 633, 642 (6th Cir. 2006). "When reviewing for plain error, this court must decide whether (1) there was an error in the district court, (2) the error was plain, (3) the plain error affected the defendant's substantial rights, and (4) the plain error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Fraser*, 448 F.3d 833, 841 (6th Cir. 2006). The admission of Best's affidavit satisfies each of these four criteria.

The use of the affidavit was error because courts do not convict by affidavit. *See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004); *see also id.* at 53-54 ("[T]he Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."); *id.* at 51 ("'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" (quoting 1 N. Webster, An American Dictionary of the English Language (1828))).[5] In its brief, the Government does not challenge this analysis. Instead, the Government argues that there are no Confrontation Clause problems with the admission of the 1987 FDIC certificate, a document distinct from Best's affidavit. *See* Gov't Br. at 23 (referring to *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993)). We, however, are not concerned with the admission of the 1987 certificate. We are concerned with Best's affidavit, an affidavit of a Government employee used to establish a necessary fact in a criminal case for which the Government offers no exception to *Crawford*. Permitting the Government to rely on the affidavit during closing argument, therefore, was error.

---

[5]Although the Supreme Court decided *Crawford* years after Sandles' trial, he is entitled to rely on *Crawford.* The Supreme Court has held that a defendant may rely on a case decided by the Supreme Court during the time that his case is pending on direct review if that case announces a new rule. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). The Supreme Court decided *Crawford* while Sandles' case was pending on direct appeal, and it announced a new rule by overruling *Ohio v. Roberts*, 448 U.S. 56 (1980). *See Davis v. Washington*, __ U.S. __, 126 S. Ct. 2266, 2275 n.4 (2006).

The error was also plain because *Crawford* establishes at the time of this appeal that the affidavit was not admissible as evidence at a criminal trial. This court looks to the time of appeal to determine whether an error is plain. *See United States v. Oliver*, 397 F.3d 369, 379 (6th Cir. 2005). By the time of this appeal, not only has the Supreme Court declared that out-of-court testimonial statements cannot be admitted against a defendant, *see Crawford*, 541 U.S. at 50-56, but as far back as 1895, the Supreme Court in *Mattox v. United States*, 156 U.S. 237, 242 (1895), described the "primary object" of the Confrontation Clause as "prevent[ing] depositions or *ex parte* affidavits . . . [from] being used against the prisoner in lieu of a personal examination and cross-examination of the witness." It was plain error to permit the Government to prove an element of a crime by affidavit.

This plain error also affected Sandles' substantial rights because, without the use of this affidavit, there was not sufficient evidence from which the jury could find that the bank's deposits were FDIC-insured. Finally, it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *Fraser*, 448 F.3d at 841, to permit the use of an affidavit when it was included in a packet of documents, when it was not mentioned until closing arguments, and when Sandles objected as soon as he realized that the document had been admitted. For these reasons, it was error to permit the use of the affidavit, and thus it was not admissible evidence of the bank's insured status.

As one of our sister circuits has stated, "'We have difficulty comprehending why the Government repeatedly fails to prove this element more carefully since the Government's burden is so simple and straightforward.'" *United States v. Brown*, 616 F.2d 844, 849 (5th Cir. 1980) (quoting *Maner*, 611 F.2d at 112). The Government presented only one piece of competent evidence as to the bank's insured status, and that piece of evidence was insufficient to establish a necessary element of a federal bank-robbery charge. Because the Government failed to present sufficient, competent evidence of the bank's FDIC status, the Government leaves us little choice but to reverse Sandles' conviction.

### B.      *Alleged Speedy Trial Act Violation*

Because there was no violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., in this case, Sandles is not entitled to have the indictment against him dismissed. *See United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004). It appears that Sandles' argument is premised on the fact that, according to him, the district court should not have granted his attorney's motion that requested an extension of time to file a "notice of insanity" because his counsel failed to demonstrate good cause for the extension. This premise is faulty. Federal Rule of Criminal Procedure 12.2(a) requires the defense to notify the Government by the time set by the trial court if the defense plans to rely upon the insanity defense. That rule grants the trial court discretion to extend the time "for good cause." *Id.* Sandles' counsel filed the motion indicating that she needed time to have Sandles evaluated by a psychiatrist to determine whether there were any grounds for the insanity defense. This was a reasonable request because defense counsel was seeking to ensure that she did not waste the court's time with the invocation of a frivolous defense at trial. Sandles cannot challenge now the district court's granting of his counsel's motion, which was supported with good cause and not opposed by the Government, that permitted him to raise his key defense at trial.

### C.      *Coram Nobis Motion*

The district court correctly determined that it lacked jurisdiction to consider Sandles' petition for a writ of coram nobis because the Eastern District of Michigan was not the court in which the alleged errors occurred and because Sandles had not served all of his sentence.

Sandles should have filed the writ in the Eastern District of Wisconsin, where he was first convicted of bank robbery, not the Eastern District of Michigan. The writ of coram nobis "can be

filed only in the court where the alleged errors occurred," *Mustain v. Pearson*, 592 F.2d 1018, 1021 (8th Cir. 1979), because it is in that district "where the records and government officials involved are located." *United States ex rel. Lavelle v. Fay*, 205 F.2d 294, 295 (2d Cir. 1953). The Eastern District of Michigan was not the court in which the alleged errors occurred; the alleged errors occurred in the Eastern District of Wisconsin, where Sandles was convicted the first time for bank robbery. *See McCants v. Ohio*, No. 99-3910, 2000 WL 876762, at *1 (6th Cir. June 23, 2000) (order) (referring to *Spaulding v. United States*, 155 F.2d 919, 920 (6th Cir. 1946) ("The writ of error coram nobis was at common law used to bring before the court that pronounced the judgment . . . .")). Sandles should have brought his petition to the federal court in Wisconsin.

Sandles also filed the wrong writ because he had not served his sentence when he filed his petition. "The proper means of *attacking the validity of a sentence which has already been served* and which is unrelated to the petitioner's present confinement is by writ of error coram nobis." *Mustain*, 592 F.2d at 1021 (emphasis added). A defendant completing his supervised release is in "custody," and the writ of coram nobis is not available to him. *See United States v. Woods*, No. 97-3866, 1998 WL 228038, at *1 (6th Cir. Apr. 29, 1998). Because Sandles was still serving his sentence on supervised release at the time that he filed his petition, he could only challenge the validity of his conviction by means of a motion to vacate his sentence under 28 U.S.C. § 2255. *See Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (holding that the custody requirement for habeas corpus is met even though the prisoner was on parole); 28 U.S.C. § 2255 (writ of habeas corpus pertains to those in "custody").

Sandles simply brought the wrong writ to the wrong court.[6]

*D.*        Booker *Issues*

Although Sandles waived any argument based on *United States v. Booker*, 543 U.S. 220 (2005), as to the fifteen-month sentence that Judge Hood imposed by failing to mention that sentence in his briefs, such an argument has been rendered moot because Sandles has served the fifteen-month sentence. *See United States v. Lewis*, 166 Fed. Appx. 193, 195 (6th Cir. 2006) ("This court can grant no meaningful relief regarding Lewis's custodial service because the sentence has already been served.").

### III.

For the foregoing reasons, we AFFIRM IN PART and REVERSE IN PART. We affirm the district court's order denying Sandles' motion to dismiss grounded on alleged violations of the Speedy Trial Act and the district court's order dismissing Sandles' petition for a writ of coram nobis for lack of jurisdiction. We reverse, however, the district court's judgment convicting Sandles of bank robbery because the Government failed to present sufficient evidence that the Michigan National Bank's deposits were insured by the FDIC at the time of the robbery. Because there was insufficient evidence in the absence of the Best affidavit, which was erroneously admitted into evidence, we remand this case for a new trial.

---

[6]As an additional matter, the Government is incorrect to argue that, because Sandles did not identify in his notice of appeal the district court's order denying his petition for a writ of coram nobis, this court lacks jurisdiction to hear the challenge to the district court's denial of Sandles' petition. "[O]ur rule is that we will entertain arguments on all objections and asserted errors prior to the final disposition of a case if a party indicates in its notice of appeal that it appeals either the final judgment or the final order in the case." *Caudill v. Hollan*, 431 F.3d 900, 906 (6th Cir. 2005). Sandles appealed the "judgement [sic] and sentence entered . . . on 11-21-02." The order denying his writ was entered prior to the judgment and sentence, and thus the notice of appeal is sufficient to bestow appellate jurisdiction upon this court.