NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0206n.06

No. 15-3779

**FILED**
Apr 13, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DEBBIE SFERRAZZA,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE:    CLAY, GIBBONS, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Debbie Sferrazza[1] is a citizen of Great Britain and lawful permanent resident of the United States. In 2011, Sferrazza pleaded guilty, pursuant to a plea agreement, to five counts of: (1) conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; (2) money laundering, in violation of 18 U.S.C. § 1957; and (3–5) filing a false tax return, in violation of 26 U.S.C. § 7206(1). The district court sentenced Sferrazza to 46 months in prison and 36 months of supervised release. After serving her prison sentence, Sferrazza was detained by U.S. Immigrations and Customs Enforcement ("ICE") and is currently awaiting deportation in county jail. On appeal, Sferrazza challenges the district court's order

---

[1] Although Sferrazza's surname is spelled "Sferraza" on the dockets before this Court and the district court, because she spelled her name S-f-e-r-r-a-z-z-a for the record at the district court level, we refer to her as "Sferrazza" throughout this opinion.

denying her petition for a writ of *coram nobis* or, alternatively, habeas corpus. Because both forms of relief are procedurally barred, we **AFFIRM**.

## BACKGROUND

In 1977, Sferrazza immigrated to the United States from Great Britain. Her husband and four children are all U.S. citizens.

On January 13, 2010, a federal grand jury returned a 33-count indictment charging Sferrazza and others, including her husband and several of her family members, with conspiracy, wire fraud, mail fraud, money laundering, and filing false tax returns. Each of these charges arose from a mortgage fraud scheme, allegedly orchestrated by Sferrazza and her co-conspirators, which began in December 2004.

Before she was indicted, but after she learned that the government was investigating her activities, Sferrazza retained attorney Robert Neil Trainor to represent her. At the time she retained him, Sferrazza had known Trainor for approximately ten years through his previous work as her brother's attorney. Trainor represented Sferrazza up to the time of her guilty plea.

On January 4, 2011, Sferrazza pleaded guilty, pursuant to a plea agreement, to Counts 1, 25, 28, 29, and 30 of the indictment. At the plea hearing, the district court explained the maximum penalties associated with each of the charges against her, but informed her that it would not be able to determine her advisory guidelines range until after a presentence report was prepared by a probation officer. Additionally, the court asked Sferrazza whether she (1) had read the plea agreement, (2) discussed its terms with Trainor, and (3) understood the agreement in its entirety. Sferrazza answered each of these inquiries in the affirmative.

Prior to calling a witness to set out the facts underlying Sferrazza's guilty plea, government counsel stated the following:

[T]here's one other matter I wanted to bring up in terms of advising the defendant of her rights, and that is with respect to immigration consequences. I understand the defendant, correct me if I'm wrong, Mr. Trainor, that she's originally a citizen of Great Britain. I believe she might be a permanent resident of the United States. I don't know that there would be any immigration consequences, but I wanted to make sure that that is explained to her as well.

(R. 331, Plea Hr'g Tr., PageID# 1151). At this time, Trainor assured the court, "Your Honor, we have reviewed that thoroughly . . . ." (*Id.* at 1152). The discussion continued as follows:

> THE COURT [addressing Sferrazza]: All right. What country are you a citizen of?
> THE DEFENDANT: Great Britain.
> THE COURT: And how are you in the United States?
> THE DEFENDANT: I'm a permanent resident.
> THE COURT: All right. Do you understand that this conviction may have consequences for your visa or whatever permanent kind of condition you have at this point in time with the immigration authorities and may even lead to your deportation?
> MR. TRAINOR [to Sferrazza]: You're aware of that.
> ([Sferrazza] conferring with Mr. Trainor.)
> MR. TRAINOR: Your Honor, she is—you are aware it may lead . . . .
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Are you certain of that, Miss Sferrazza?
> (Mr. Trainor conferring with [Sferrazza].)
> THE COURT: Let me explain it a little bit more. Neither I nor the United States in the form of the U.S. Attorney's Office ha[s] any influence whatsoever over immigration. [The immigration authorities] have their own rules and regulations. Since you aren't a citizen of the United States, you're in the United States on some kind of a permanent visa, it is possible that the immigration authorities may seek to deport you. I don't know if that will happen, I doubt it will, but it is a possibility, and I just want to make sure that you are aware of that.
> THE DEFENDANT: Yes, Your Honor, I'm aware of it.
> THE COURT: All right.

(*Id.* at 1152–53).

The parties then proceeded to discuss the facts underlying Sferrazza's guilty plea, which were set out by a special agent for the Federal Bureau of Investigations. After the special agent recited the statement of facts, Sferrazza confirmed that everything the agent had said was true and correct, and the district court accepted Sferrazza's guilty plea.

On June 30, 2011, Sferrazza filed a *pro se* motion to withdraw or set aside her guilty plea and proceed with the assistance of a public defender. As part of her motion, Sferrazza attached a slip opinion from the Ohio Supreme Court stating that Trainor's license to practice law had been suspended earlier that month based on his: (1) failure to notify a client that he did not carry malpractice insurance, (2) failure to promptly return funds to a client, and (3) prior discipline for professional misconduct in both Ohio and Kentucky. Sferrazza noted that in light of Trainor's suspension, he could no longer represent her in her criminal suit. Additionally, although the slip opinion did not describe Trainor's professional misconduct as arising from or relating to Sferrazza's case, Sferrazza opined that "[i]t [wa]s clear from that opinion that [she] was not being represented adequately during [her criminal] case." (R. 288, Mot. to Withdraw, PageID# 996). Sferrazza also asserted that she "would not have pled guilty had she been properly informed of the consequences," though she did not explicitly identify the "consequences" to which she was referring. (*Id.*).

On July 12, 2011, the government filed an opposition to Sferrazza's motion to withdraw. In her *pro se* reply, Sferrazza argued for the first time that Trainor was ineffective because he lacked knowledge about immigration law and, as a result, she neither was informed about nor understood the immigration consequences that attached to entering a guilty plea.

Shortly after Sferrazza filed her motion, Peter Rosenwald, a public defender, was appointed as her attorney.[2] On September 9, 2011, Rosenwald filed a second motion to withdraw Sferrazza's guilty plea. In her attorney-filed motion, Sferrazza argued that her guilty plea should be set aside because Trainor "did not provide effective assistance" and "her Pleas

---

[2] Although the record is slightly ambiguous with regard to this point, it appears that even though Rosenwald assumed that his role would be to act as Sferrazza's standby counsel while she represented herself, he was ultimately appointed as her attorney.

were not knowingly and intelligently made." (R. 336, Mot., PageID# 1196). In support of this assertion, Sferrazza maintained that (1) the disciplinary actions against Trainor, as referenced in the Ohio Supreme Court's slip opinion, demonstrated that Trainor "tended to neglect the needs of his clients," (2) Trainor was not sufficiently "well[-]versed in the United States Sentencing Guidelines" to properly advise Sferrazza as to what her sentence would be, and (3) Trainor failed to properly advise her of the potential immigration consequences of entering a guilty plea, including deportation. (*Id.* at 1197–98). Sferrazza also alleged that she was not aware of the potential immigration consequences of pleading guilty until government counsel raised the issue at the January 4, 2011 plea hearing.

At the hearing on her motion to withdraw, Sferrazza testified that Trainor failed to adequately explain the sentencing guidelines and insisted that Sferrazza sign the plea agreement even after she told him that she did not commit some of the acts described therein. Despite her misgivings, however, Sferrazza followed Trainor's advice because she trusted him when he told her that pleading guilty was in her "best interest." (*Id.* at 1234, 1237). When Sferrazza later spoke to Trainor about withdrawing her plea, he told her that withdrawal was impossible.

Sferrazza also testified that she only learned that pleading guilty could result in deportation based on government counsel's remarks at the plea hearing, stating:

> I believe at one point right after [government counsel] had actually brought up the fact that I could be deported, I told Mr. Trainor I didn't—"We haven't talked about this." I believe that the Judge then asked—I believe Judge Dlott asked if—if I was aware of that, and I believe Mr. Trainor actually answered for me. And I was still having words with him saying, "I did not know that; that we didn't talk about this, and I don't want to do this." He told me to just agree and we would talk about it after court.

(R. 347, Testimony Tr., PageID# 1243). According to Sferrazza, Trainor failed to discuss the possibility of deportation with her even after she pleaded guilty.

On cross-examination, Sferrazza admitted that she neither raised any complaints about Trainor's representation nor said she had previously asked to withdraw her plea when speaking to her pretrial services officer or her probation officer. Government counsel pointed out that despite Sferrazza's *post hoc* complaints about Trainor's representation, and despite the fact that Trainor was retained rather than court-appointed, Sferrazza never fired him. Government counsel also suggested that based on the timing of her co-defendants' sentencing hearings, Sferrazza's true reason for wanting to withdraw her plea was because she had seen some of her co-defendants, including her brother, receive prison sentences based on their roles in the mortgage fraud scheme. Finally, government counsel noted that Sferrazza never mentioned Trainor failing to withdraw her plea in contravention of her wishes in either of her *pro se* pleadings.

After hearing from the parties and rejecting Rosenwald's proposal to subpoena Trainor, the district court denied Sferrazza's motion to withdraw. The court noted, among other things, that: (1) the possibility of deportation, as well as the maximum penalties associated with the charges against her, were explained to Sferrazza at the plea hearing; (2) Sferrazza confirmed under oath that the government's statement of facts was correct; (3) Sferrazza indicated that she understood and agreed to the terms of the plea; (4) despite her allegations that she repeatedly asked Trainor to withdraw her plea, approximately six months elapsed between the date Sferrazza pleaded guilty and the date she filed her *pro se* motion to withdraw; and (5) although Sferrazza was given the opportunity to seek alternate representation after learning that Trainor's license had been temporarily suspended in Kentucky, she elected to keep Trainor as her attorney.

On December 1, 2011, the district court sentenced Sferrazza to a total of 46 months in prison and 36 months of supervised release. The court also imposed monetary penalties in the form of $536,208.66 in restitution, plus a $500 special assessment.

Sferrazza filed a timely appeal in December 2011. However, five months later, the appeal was dismissed for want of prosecution after she failed to file an opening brief.[3] *See* 6 Cir. R. 26(b).

On June 9, 2015, Sferrazza filed the petition for a writ of *coram nobis* or, alternatively, habeas corpus, underlying this appeal. In an affidavit submitted in conjunction with the petition, Sferrazza alleged the following. On May 8, 2015, after being released from prison, Sferrazza was immediately taken into custody by ICE and placed in a county jail in Elk River, Minnesota, where she is awaiting removal proceedings. ICE has informed Sferrazza that her removal from the United States is mandatory based on the specific offenses to which she pleaded guilty.

In both her petition and accompanying affidavit, Sferrazza asserted that Trainor, Rosenwald, and the district court failed to inform her that deportation was *mandatory*—rather than *possible*—when she pleaded guilty. Sferrazza also asserted that she would have (1) insisted on going to trial and (2) directly appealed the district court's order denying her motion to withdraw, if she had known that a guilty plea would result in her automatic deportation to Great Britain. Analogizing her situation to that of the petitioner in *Padilla v. Kentucky*, 559 U.S. 356 (2010), Sferrazza argued that because her attorney failed to properly advise her of the risk of deportation associated with her guilty plea, she was not fully aware of the consequences of pleading guilty and her plea was not "voluntary." Depending on whether she was "in custody" at

---

[3] It is unclear from the record why Sferrazza failed to file her opening brief, and she declined to explain this omission in the pending appeal. However, we note that as part of her plea agreement, Sferrazza waived the right to appeal her sentence unless it exceeded the maximum statutory penalty, a requirement not met in this case.

the time of her petition, Sferrazza requested that the district court either construe her petition as one for a writ of *coram nobis* or, alternatively, habeas corpus. In either event, Sferrazza sought an order vacating her guilty plea and convictions.

On June 18, 2015, the district court issued an order denying Sferrazza's petition, noting that Sferrazza had expressed an understanding of the penalties and other ramifications associated with a guilty plea, including deportation, at the plea hearing. Ultimately, the district court denied habeas relief under 28 U.S.C. § 2255 because Sferrazza failed to comply with § 2255's one-year statute of limitations. *See* 28 U.S.C. § 2255(f). The court also denied *coram nobis* relief on the grounds that *coram nobis* is an "extraordinary writ" available only to correct fundamental errors affecting a defendant's criminal proceedings. In this vein, the district court found that *coram nobis* relief was inappropriate because (1) Sferrazza had overstated the predictability of the immigration consequences flowing from her guilty plea and (2) Trainor had satisfied the requirements set out in *Padilla* and *Strickland v. Washington*, 466 U.S. 668 (1984), by advising Sferrazza that the criminal charges against her carried the risk of deportation. This appeal followed.

## DISCUSSION

### I.     Writ of *Coram Nobis*

In reviewing the district court's denial of Sferrazza's petition for a writ of *coram nobis*, we review its legal conclusions *de novo* and its factual findings for clear error. *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012).

Citing our decision in *Maiyo v. United States*, 576 F. App'x 567 (6th Cir. 2014), the district court denied Sferrazza's request for *coram nobis* relief on the grounds that Trainor "satisfied his duty to [Sferrazza] under the holding of *Padilla*" by informing her that she could be

deported if she pleaded guilty. On appeal, the government argues that Sferrazza's petition for a writ of *coram nobis* is barred in any event because she is still "in custody." *Appellee's Br.* at 18–21. We agree with this assertion, and affirm the district court's denial of Sferrazza's request for *coram nobis* relief on this ground. *See Bangura v. Hansen*, 434 F.3d 487, 498 n.3 (6th Cir. 2006) ("[T]his Court may uphold a district court's order on any ground supported by the record."); *Bybee v. United States*, 66 F. App'x 557, 559 (6th Cir. 2003) (affirming "the district court's [denial of a § 2255 petition] for reasons other than those set forth by the district court").

"*Coram nobis* is an extraordinary writ that may be used to 'vacate a federal sentence or conviction when a § 2255 motion is unavailable—generally, when the petitioner has served his sentence completely and thus is no longer in custody.'" *Pilla*, 668 F.3d at 372 (quoting *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996)); *see also Chaidez v. United States*, 133 S. Ct. 1103, 1106 n.1 (2013) ("A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241."). A person who is still "in custody" is not eligible for *coram nobis* relief. *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001) (collecting cases).

The government argues that Sferrazza is barred from seeking a writ of *coram nobis* because she has not yet completed her supervised release. *Appellee's Br.* at 19–21. Because she failed to file a reply brief, Sferrazza makes no attempt to rebut this argument.

This Court and several of its sister courts have held that for purposes of evaluating a *coram nobis* petition, a defendant is "in custody" while she is completing her supervised release term. *See United States v. Estrada*, 580 F. App'x 672, 673 (10th Cir. 2014); *United States v. Miller*, 546 F. App'x 335, 336 (5th Cir. 2013) (per curiam); *United States v. Sandles*, 469 F.3d

508, 517 (6th Cir. 2006); *United States v. Akkaraju*, 97 F. App'x 43, 44–45 (7th Cir. 2004); *United States v. Smith*, 77 F. App'x 180, 180 (4th Cir. 2003) (per curiam); *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002); *see also Maleng v. Cook*, 490 U.S. 488, 491 (1989) (noting that a prisoner need not be "physically confined" in order to be "in custody," and that prisoners placed on parole are "in custody" for habeas purposes). Because a defendant completing her supervised release is "in custody," "the writ of *coram nobis* is not available to [her]." *Sandles*, 469 F.3d at 517 (citation omitted).

Sferrazza was sentenced to 46 months in prison and 36 months of supervised release. She completed her prison term on May 8, 2015, and therefore will not complete her supervised release until May 8, 2018.[4] Since Sferrazza remains in custody under the terms of her supervised release, she is barred from obtaining relief pursuant to a writ of *coram nobis*.

## II.    Writ of Habeas Corpus

As an alternative to *coram nobis* relief, Sferrazza seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the following reasons, we agree with the district court's conclusion that Sferrazza's request for habeas relief is barred by the Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations. *See* 28 U.S.C. § 2255(f).

As an initial matter, the government argues that we lack jurisdiction to adjudicate Sferrazza's petition for habeas relief because Sferrazza neither sought nor was granted a certificate of appealability ("COA") after the district court denied her petition. *Appellee's Br.* at 13–14.

---

[4] Because we agree with the government's assertion that Sferrazza is still in custody pursuant to her supervised release, we do not reach its separate argument that she continues to be "physically in custody" by virtue of her detainment by ICE. *See Appellee's Br.* at 20.

"Under 28 U.S.C. § 2253(c)(1)(B), the final order in a § 2255 proceeding is not appealable without a certificate of appealability. Absent a certificate of appealability we lack jurisdiction to review such an order." *United States v. Bryant*, 246 F.3d 650, 653 (6th Cir. 2001) (citation omitted); *see also United States v. Hardin*, 481 F.3d 924, 926 (6th Cir. 2007) ("[W]e lack jurisdiction to hear a habeas appeal without a certificate of appealability."). "[Federal Rule of Appellate Procedure] 22(b)(1) requires the district judge to decide whether to issue a COA upon the filing of the notice of appeal." *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The district court issued its order denying Sferrazza's petition on June 18, 2015, and Sferrazza appealed on July 9, 2015. However, it appears from both this Court's docket and the district court's docket that Sferrazza never requested, and the district court never granted (or denied), a COA.[5] Under such circumstances, we generally remand the matter to the district court for a decision as to whether a COA should issue. *See Castro*, 310 F.3d at 903–04 ("[W]e hereby remand this case to the district court so that it may either issue a COA or state why a certificate should not issue pursuant to Rule 22(b)(1) and 28 U.S.C. § 2253(c)."); *Cruz*, 108 F. App'x at 348 ("We generally transfer COA requests in the first instance to the district court when the district court has not ruled."). In this case, however, because we agree with the district court's conclusion that Sferrazza's habeas petition is barred by AEDPA's one-year statute of limitations, remanding this case would only waste judicial resources. *See Cruz*, 108 F. App'x at 348.

---

[5] Had the district court denied a request for a COA, Sferrazza could have sought one from this Court instead. *See* Fed. R. App. P. 22(b)(1) ("If the district judge has denied the [COA], the applicant may request a circuit judge to issue it."); *United States v. Cruz*, 108 F. App'x 346, 348 (6th Cir. 2004) (noting that when the district court does not rule on a COA, "we can proceed to consider whether to grant the COA ourselves").

"In reviewing a district court's denial of a motion under [§] 2255, we apply a clearly erroneous standard to its factual findings and review its conclusions of law *de novo*." *Jenkins v. United States*, 394 F.3d 407, 410 (6th Cir. 2005) (quoting *Nichols v. United States*, 285 F.3d 445, 446 (6th Cir. 2002)).

Under AEDPA, a prisoner has one year from the date her conviction became final to file a § 2255 petition. 28 U.S.C. § 2255(f)(1); *Reed v. United States*, 13 F. App'x 311, 312 (6th Cir. 2001). "As a general matter, convictions become final upon conclusion of direct review." *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004) (citing *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002)).

Because Sferrazza appealed her convictions and sentence, but the appeal was eventually dismissed for want of prosecution, the date on which her convictions became final is somewhat ambiguous under our precedent. However, this ambiguity is of little import because it is clear from the record that Sferrazza's § 2255 petition was filed outside of AEDPA's one-year statute of limitations.

We have held that "[w]hen a federal criminal defendant appeals to the court of appeals, the judgment of conviction becomes final for § 2255 purposes upon the expiration of the ninety-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition is filed." *Johnson v. United States*, 457 F. App'x 462, 464 (6th Cir. 2012) (citing *Sanchez-Castellano*, 358 F.3d at 426–27). On the other hand, "when a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Sanchez-Castellano*, 358 F.3d at 427.

We dismissed Sferrazza's appeal for want of prosecution on May 4, 2012.[6] Assuming her convictions only became final upon the expiration of the 90-day period to file a petition for a writ of certiorari, AEDPA's one-year statute of limitations began to run on August 2, 2012. *See Id.* at 426; *see also United States v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000) (per curiam). Thus, in order to comply with AEDPA's one-year statute of limitations, Sferrazza was required to file her § 2255 petition no later than August 2, 2013.

On the other hand, if we treat the date Sferrazza's appeal was dismissed for failure to prosecute as the date the statute of limitations began to run, the one-year statute of limitations expired approximately three months earlier, on May 4, 2013. This was the approach taken by the district court and is the argument advanced by the government on appeal.

Finally, if we treat Sferrazza's failure to prosecute as the failure to file an appeal in the first place, then the statute of limitations expired even earlier. *See Sanchez-Castellano*, 358 F.3d at 427 ("[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed."). Under this calculation, Sferrazza's convictions would have become final on December 27, 2012—fourteen days after the date the district court entered the judgment of conviction. Fed. R. App. P. 4(b)(1)(A)(i).

Regardless of which date we construe as the one-year deadline—August 2, 2013, May 4, 2013, or December 27, 2012—the statute of limitations expired approximately two years (or more) before Sferrazza filed her § 2255 petition on June 9, 2015. Thus, to the extent she seeks

---

[6] Although the order did not appear on the district court's docket until May 8, 2012, it was filed on May 4.

habeas relief under § 2255, Sferrazza's petition was untimely and the district court did not err in denying the petition as barred by AEDPA's one-year statute of limitations.

In an effort to save her § 2255 petition, Sferrazza argues that the district court's denial of her habeas petition ignored the possibility that the limitations period was equitably tolled. *Appellant's Br.* at 27–28. In general, "a petitioner who misses the [one-year] deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001)).

Sferrazza failed to raise her tolling argument below, and, as a general rule, "an argument not raised before the district court is waived on appeal to this Court." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614–15 (6th Cir. 2014) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)) (quotation marks omitted). "This Court deviates from the general waiver rule . . . only when it 'would produce a plain miscarriage of justice' or when there are exceptional circumstances that militate against finding a waiver." *Id.* (citation omitted). Sferrazza's appellate brief does not acknowledge her failure to raise the tolling argument below, let alone argue that exceptional circumstances weigh against finding that the issue is waived. More importantly, concluding that she waived this issue would not result in a plain miscarriage of justice because her tolling argument is without merit.

Although "AEDPA's limitations period is subject to equitable tolling," *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011), "the doctrine of equitable tolling is used sparingly by federal courts," and a petitioner "seeking equitable tolling bears the burden of proving [s]he is entitled to it," *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citations omitted). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted).

Sferrazza's arguments regarding why the statute of limitations should be tolled are unpersuasive. First, she notes that district courts have discretion in determining whether tolling is appropriate. *Appellant's Br.* at 27–28. Second, she observes that (in some cases) the one-year limitations period does not begin to run until the date on which the facts supporting the claim could be discovered through the exercise of due diligence. *Id.* at 28 (citing 28 U.S.C. § 2255(f)(4)).

As to her first point, because Sferrazza never raised her equitable tolling argument below, the district court did not have the opportunity to determine whether tolling was appropriate. As to her second point, although Sferrazza contends that she was not "made aware that the offenses to which she pleaded guilty actually required her deportation" until after she was released from prison in May 2015, *Appellant's Br.* at 8, this argument is plainly belied by the record.

After pleading guilty in January 2011, Sferrazza filed a *pro se* motion to withdraw her plea in June 2011. In the attorney-filed motion to withdraw that followed, Sferrazza argued that Trainor rendered ineffective assistance because, *inter alia*, he was not well-versed in immigration law and failed to advise her of the consequences of pleading guilty, including deportation. Thus, it is clear from the record that Sferrazza was aware, no later than September 2011, of the factual circumstances underlying the ineffective assistance claim in her petition. Further, even if we accept Sferrazza's apparent argument that she did not understand that deportation was *mandatory* rather than *possible* under the applicable immigration statutes until she was released from prison in May 2015, *see Appellant's Br.* at 29, she provides no

explanation as to why she did not or could not discover this information in the nearly four years between the filing of her motion to withdraw and her release from prison. This substantial time lapse strongly suggests that Sferrazza failed to pursue her rights diligently, and she points to no extraordinary circumstances that prevented timely filing. *See Holland*, 560 U.S. at 649; *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 457 (6th Cir. 2009).

Finally, we note that Sferrazza's ineffective assistance argument, as it relates to the deportation issue, was heard by the district court in October 2011. At the hearing on her motion to withdraw, Sferrazza testified that Trainor neglected to inquire about her citizenship or explain the possibility of deportation; she also testified the first time she learned that she could be deported was when government counsel raised the issue at the plea hearing. In denying Sferrazza's motion to withdraw, the district court noted, among other things, that the court itself had discussed the possibility of deportation with Sferrazza and that Sferrazza had nonetheless elected to plead guilty. Thus, there is no indication in the record that Sferrazza was unaware of her ineffective assistance claim arising from the deportation issue, or that she lacked sufficient information to raise this claim in a § 2255 petition before the statute of limitations expired.

Overall, Sferrazza fails to advance an argument that satisfies *Holland*'s two-part test because she has not argued, let alone shown, that she (1) pursued her rights diligently or (2) some extraordinary circumstance prevented her from timely filing her § 2255 petition. Accordingly, her tolling argument fails.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM**.